In re AIR CRASH DISASTER NEAR CHICAGO, ILLINOIS, ON MAY 25, 1979.

Appeal of AMERICAN AIRLINES, INC.,

and

In re AIR CRASH DISASTER NEAR CHICAGO, ILLINOIS, ON MAY 25, 1979.

Appeal of McDONNELL DOUGLAS CORPORATION.

Nos. 80-1975, 80-1976.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1980.

Decided Feb. 17, 1981.

---

Thomas D. Allen, Robert E. Haley, Ruth E. Van Demark, Kathy P. Saxton, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for American Airlines, Inc.,

Norman J. Barry, Christopher G. Walsh, Jr., Rothschild, Barry & Myers, Chicago, Ill., for McDonnell Douglas,

James C. Kellogg, Dennis J. Kellogg, Chicago, Ill., for plaintiff-appellee.

John J. Kennelly, Kevin M. Forde, Chicago, Ill., for plaintiffs.

George F. Archer, Chicago, Ill., for Plesa plaintiffs.

Fred A. York, Mount Clemons, Mich., James F. Graves, East Lansing, Mich., Denis R. Leduc, Mount Clemons, Mich., for Michigan plaintiffs.

Before SPRECHER and WOOD, Circuit Judges, and BROWN, Senior District Judge.*

SPRECHER, Circuit Judge.

The questions before us are whether Illinois law allows a court to instruct a jury to award prejudgment interest in an action

* Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, is sitting by designation.

under the Illinois Wrongful Death Act, Ill. Rev.Stat. ch. 70, §§ 1, 2, and whether the award of $27,500 given here, supposedly representing prejudgment interest, can be interpreted as being part of the "fair and just compensation" for plaintiff's pecuniary injuries.

I

This action arises out of the crash of a DC–10 jet manufactured by defendant McDonnell-Douglas Corp. ("MDC") and operated by defendant American Airlines ("American"). The plane, which was scheduled to fly to Los Angeles as American Airlines Flight 191, crashed shortly after takeoff from O'Hare International Airport on May 25, 1979. Plaintiff's decedent, Craig Valladares, was one of the passengers aboard the plane who died as a result of the crash.

This action was brought by Jewel Valladares in her capacity as widow and personal representative of the decedent and as parent and next friend of the decedent's surviving child, Michelle Valladares. The action originally was filed in the Circuit Court of Cook County, Illinois, but was removed to the United States District Court for the Northern District of Illinois on the basis of diversity of citizenship of the parties. The action later was consolidated for pretrial purposes with other actions arising out of the same crash by order of the Judicial Panel on Multidistrict Litigation. *In re Air Crash Disaster Near Chicago*, 476 F.Supp. 445 (Jud.Pan.Mult.Lit.1979).

In the course of the pretrial proceeding in MDL No. 391, one of the plaintiffs moved for a partial summary judgment order requiring the defendants to pay prejudgment interest from the date of the deaths. In turn, American moved to dismiss all plaintiffs' claims for prejudgment interest for failure to state a claim for relief.

The district court issued a memorandum opinion denying both the plaintiff's motion for summary judgment and American's motion to dismiss. *In re Air Crash Disaster Near Chicago*, 480 F.Supp. 1280 (N.D.Ill. 1979). The district court concluded that prejudgment interest was recoverable as a matter of law, but that the entry of summary judgment was inappropriate prior to a final determination of the damages to which the plaintiffs were entitled. The court stated, however, that it would "include prejudgment interest as an element of damages in all instructions to juries or in calculating damages in any bench trials." 480 F.Supp. at 1288.

American and MDC filed motions to vacate the prejudgment interest order. After further briefing of the issue by the parties, the district court issued an order denying the motions to vacate.

On December 19, 1979, plaintiff Jewel Valladares entered a stipulation with American and MDC whereby plaintiff waived any claim for punitive damages in exchange for defendants' waiver of their right to contest liability for compensatory damages, exclusive of prejudgment interest. Following the completion of pretrial discovery, a three-day trial was held before an eight-person jury. Over the defendants' objection, the district court instructed the jury that the plaintiff was entitled to prejudgment interest from the date of death to the date of verdict on the entire amount of damages the jury calculated to be the present value of the pecuniary loss Jewel and Michelle Valladares suffered as the result of the death of Craig Valladares.[1]

---

1. The jury instructions regarding the calculation of damages were, in relevant part, as follows:

In calculating the amount of these pecuniary benefits you must not simply multiply the life expectancy by the annual benefit. In other words, assuming the figure is X dollars and it is 39½ years, you just cannot multiply 39½ times X and arrive at that as the figure. Instead, you must determine their present cash value.

Present cash value means the sum of the money that is needed at the present time, which together with what that sum will earn in the future, would equal the amount of pecuniary benefits received at the times in the future when they would have been received. In other words, the calculations that you saw here were calculations of what it would have taken on the date of Mr. Valladares' death, not today, but Mr. Valladares' death, what would have been necessary at that time to provide a level of contribution to Mrs. Valladares and Michelle over a period of years comparable to the $10,000 which the experts were asked to assume, increased as

The court's instructions required the jury to determine present cash value as of the date of death. Defendants originally had argued that Illinois law requires that present cash value be determined as of the date of trial. Defendants then waived that issue and allowed present cash value to be computed as of the date of death in order "to frame as clearly as we can the issue of prejudgment interest."[2]

On June 23, 1980, the jury returned the following verdict:

> We, the Jury, assess the Plaintiffs' damages for the death of decedent against the Defendants, American Airlines, Inc. and McDonnell Douglas, Inc. in the sum of $250,000.00.
>
> We, the Jury, assess Prejudgment Interest for the period May 26, 1979 to date in the sum of $27,500.00.

Judgment was entered on the verdict. Defendants paid plaintiff $250,000 in satisfaction of that portion of the judgment awarding $250,000 in compensatory damages. None of the parties have appealed from that portion of the judgment. Defendants MDC and American appeal from the portion of the judgment allowing $27,500 in prejudgment interest.[3]

they calculated there would be an increase based on inflation, and interest rates over the life of the 39½ years that they were talking about.

The figures that you have here were present value figures. Nobody just multiplied X by 39½. They did that and then they did the annuity calculation. They discounted to present value how much would be required now to have to produce an adequate compensation based on the assumptions that were made to Mrs. Valladares and Michelle over the 39½ years that was estimated for Mr. Valladares' life expectancy.

Now, the determination as to how much he would have contributed each year and for how long, and the present value of that contribution you are going to have to make. You have had experts give you figures with respect thereto, and you have had arguments by counsel as to which figures you should accept. *In addition to determining the present value as of the date of Mr. Valladares' death, which was May 25, 1979, we are now June 23, 1980, and the plaintiffs have not had the use of the present value on the date of Mr. Valladares' death of the money for the last thirteen months. So, they are entitled to be compensated in the amount of interest which what you determine was the present value as of the date of his death would have earned had they been paid that on the date he died, up to the present time, which is thirteen months.*

You will have to determine first the present value and will have to decide what the rate of interest that that money would have earned over the past thirteen months is, and then you are going to make a separate determination as to how much interest should be paid over and above the present value as of the date of his death of the compensation of which Mrs. Valladares and her daughter were deprived by virtue of his death.

That is reflected in the verdict form which you will have, because the verdict form has two separate findings. One says, "We, the jury, find for the plaintiffs and against the Defendant American Airlines, Inc., McDonnell Douglas, Inc. in the amount of dollars, blank." That is the present cash value figure you are going to have to determine. The second one says, "We, the jury, assess prejudgment interest for the period, May 26, 1979 to date, in the sum of dollars, blank." That is the second calculation which you are going to have to make by deciding what the rate of interest is for 13 months to be applied to the *present value calculation that you make as of the date of his death,* simply to compensate them for the loss of the use of that money for the last 13 months which they have not had and the defendants have had the use of during that period of time.

. . .

Finally, when you get all through having determined the real value you have to make an additional calculation as to how much interest the plaintiffs lost by virtue of the fact they were not compensated on the day he died, and their not being compensated until some later date, and that figure you will have to decide what the rate of interest would have been for the past thirteen months and how much the present value was, and you compute that rate of interest on the present value which you have determined. You write that down as a separate figure on the verdict.

Tr. of June 23, 1980 at 404–406, 410–411 (emphasis added).

2. As noted in part IV of this opinion, this stipulation, rather than focusing the issue for our review, completely obscures the issue of prejudgment interest.

3. Briefs were submitted by the Plaintiffs' Committee and other intervenors in support of the district court's allowance of the $27,500 award. We refer to "plaintiffs" as a group as well as plaintiff Jewel Valladares in this opinion.

For the reasons stated below, we agree with defendants that prejudgment interest, as such, is not allowed in Illinois unless provided by statute, and the Illinois Wrongful Death Act does not explicitly allow prejudgment interest. However, we find that, in this particular case, there actually was no prejudgment interest awarded. Rather, the district court merely allowed a proper adjustment to arrive at the "present value" of plaintiff's loss, which is the correct measure of damages under Illinois law. Therefore, we affirm the entry of judgment on the jury's verdict.

## II

■ Preliminarily, we find that Illinois law applies. As the district court observed in its opinion on the subject of prejudgment interest,[4] the availability of prejudgment interest must be determined by reference to state law. *In re Air Crash Disaster Near Chicago*, 480 F.Supp. 1280, 1282 (N.D.Ill. 1979). In this case, the only applicable state law is that of Illinois, since the accident occurred in Illinois, and both plaintiff and decedent are and were Illinois domiciliaries.[5]

Because we are bound to follow Illinois law, we are not free to devise a different measure of damages pursuant to our "general equitable powers," as suggested by the district court. 480 F.Supp. at 1286–88. Plaintiffs have argued convincingly that a uniform federal law would be desirable in air crash cases involving citizens and laws of several states. But as we stated very recently in another facet of this case, *In re Chicago Air Crash*, 644 F.2d 594, 632 (7th Cir. 1981), achievement of uniform treatment of plaintiffs and defendants through federal law is a task for Congress, not a federal court in a diversity action.[6] Therefore, we decline to hold that a federal rule of damages in wrongful death cases applies.

■ Plaintiffs also argue that other courts construing wrongful death statutes similar to Illinois' have concluded that prejudgment interest was an essential part of plaintiff's compensatory damages.[7] The

---

4. That opinion and the submissions of the parties in that proceeding regarding prejudgment interest were made a part of the record in this case by request of the defendants with the approval of the district court. References herein to "the district court opinion" mean the opinion at 480 F.Supp. 1280.

5. Since this case was brought in Illinois, we look to Illinois law to resolve any conflict of law. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). As noted by the district court:
    > Under Illinois conflicts law, the issue of damages in a wrongful death action is governed by the law of the state where the injury occurred unless some other state has a more significant relationship to the parties and the occurrence, in which case the law of the other state applies. *Ingersoll v. Klein*, 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1970); *Semmelroth v. American Airlines*, 448 F.Supp. 730, 732 (E.D.Ill.1978).
    480 F.Supp. at 1282–83. The court correctly concluded that in cases where the administrators or executors of the estates of air crash victims are citizens of Illinois, and the estates are being administered in Illinois, no other state could have a more significant relation to the occurrence or the parties.

6. This court applied a federal rule of contribution and indemnity to an air crash case in *Kohr v. Allegheny Airlines, Inc.*, 504 F.2d 400 (7th Cir. 1974), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975). But, this court later refused to extend *Kohr*. In *Bowen v. United States*, 570 F.2d 1311, 1316–17 (7th Cir. 1978), we held that state law governed an action arising out of an air crash and brought under the Federal Tort Claims Act. Recent Supreme Court cases also suggest that we are not free to depart from state law in air crash cases. *See Miree v. De Kalb County*, 433 U.S. 25, 97 S.Ct. 2490, 55 L.Ed.2d 557 (1977); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 273–74, 93 S.Ct. 493, 506–07, 34 L.Ed.2d 454 (1972).

7. Cases cited by plaintiffs include *Moore-McCormack Lines, Inc. v. Richardson*, 295 F.2d 583 (2d Cir. 1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 596 (1962); *National Airlines v. Stiles*, 268 F.2d 400 (5th Cir. 1959), *cert. denied*, 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959); *Lemrick v. Grinnell Mutual Reinsurance Co.*, 263 N.W.2d 714 (Iowa 1978); *Wetz v. Thorpe*, 215 N.W.2d 350 (Iowa 1974); *State v. Philips*, 470 P.2d 266 (Alaska 1970).
    In *Moore-McCormack* and *Stiles*, the courts allowed awards for prejudgment interest in death actions under the Death on the High Seas Act, 46 U.S.C. §§ 761–768. These cases illustrate two different approaches to calculating prejudgment interest. In *Moore-McCormack*, the future losses were discounted to the date of trial, and interest was allowed on past losses,

district court apparently was influenced by the fact that "courts in other jurisdictions faced with substantially the same language in their wrongful death statutes have concluded that prejudgment interest is an essential part of 'fair and just compensation.'" 480 F.Supp. at 1286. We agree with defendants that neither another state's interpretation of its wrongful death statute, nor a federal court's interpretation of a federal statute, can be the sole basis of our decision here. We must decide within the bounds of Illinois law. In part IV of this opinion, however, we will use cases from other jurisdictions where useful to illustrate the types of formulas used to compute "present value" and "fair and just compensation" in wrongful death cases.

### III

■ In Illinois, the general rule is that prejudgment interest cannot be awarded unless provided by statute or agreement of the parties. *Lakefront Realty Corp. v. Lorenz*, 19 Ill.2d 415, 167 N.E.2d 236, 240–41 (1960); *Geohegan v. Union Elevated R.R. Co.*, 266 Ill. 482, 107 N.E. 786, 791 (1915).[8] Here, there certainly was no agreement to provide prejudgment interest, so we must examine the statutes involved which possibly could justify prejudgment interest. Defendants argue that neither the Illinois interest statute, Ill.Rev.Stat. ch. 74, § 2, nor the Illinois Wrongful Death Act, Ill.Rev. Stat. ch. 70, § 2, authorizes prejudgment interest here, and that, therefore, the dis-

trict court erred in allowing the jury to add the $27,500 prejudgment interest award to the $250,000 damage award.

### A

First, Illinois has a prejudgment interest statute that allows prejudgment interest on bonds, bills, promissory notes or other written instruments; on money due on liquidated settlements of accounts; on money wrongfully taken; and on money withheld by "unreasonable and vexatious delay" of payment. Ill.Rev.Stat. ch. 74, § 2.[9] The district court indicated that plaintiffs here might become entitled to prejudgment interest under the "unreasonable and vexatious delay" provision. 480 F.Supp. at 1285. But the district court made no finding of unreasonable and vexatious delay, nor did the district court's instructions to the jury require such a finding in order to assess prejudgment interest.

In fact, it is clear that the prejudgment interest statute cited above was not the basis of the decision to allow prejudgment interest. The jury was not instructed to apply the statutory rate for prejudgment interest. Rather, the decision to allow prejudgment interest and the relevant jury instructions were based on the Illinois Wrongful Death Act, Ill.Rev.Stat. ch. 70, § 2, which provides for "fair and just compensation with reference to the pecuniary injuries resulting from such death...." Indeed, at oral argument plaintiffs specifi-

---

at the same rate as the discount, from the time they accrued until trial. 295 F.2d at 595. In *Stiles*, the entire award was discounted to the date of death and interest added to the entire amount for the period from date of death to judgment. 268 F.2d at 405–406. Similarly, in *Wetz*, the award was calculated as of death and interest allowed on the entire amount. 215 N.W.2d at 357–358. The *Stiles* and *Wetz* formula is the way that interest was calculated in this case.

8. The continuing vitality of this rule is indicated by recent cases in the Illinois Appellate Court. *See, e. g., North Shore Marine, Inc. v. Engel*, 81 Ill.App.3d 530, 36 Ill.Dec. 588, 592–93, 401 N.E.2d 269, 273–74 (1980); *Stevenson v. ITT Harper, Inc.*, 51 Ill.App.3d 568, 9 Ill.Dec. 304, 313–14, 366 N.E.2d 561, 570–71 (1977); *Hamilton v. American Gage & Machine Corp.*,

35 Ill.App.3d 845, 342 N.E.2d 758, 764 (1976); *Gonzalez v. Danaher*, 30 Ill.App.3d 992, 332 N.E.2d 603, 604 (1975). But these cases are all distinguishable from the case at bar, as discussed in part III(C).

9. Ill.Rev.Stat. ch. 74, § 2, provides:

Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment.

cally disavowed any reliance on the interest statute to support the award. Thus, the central issue here is whether the Illinois Wrongful Death Act allows an award of prejudgment interest, and, specifically, if the award here is supported by the Act.[10]

B

The Illinois Wrongful Death Act, Ill.Rev. Stat. ch. 70, § 2, provides in relevant part:

[T]he jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person.

There is no specific statutory provision detailing how the pecuniary injuries to the surviving spouse and next of kin are to be calculated. Defendants argue that in light of the Illinois presumption against prejudgment interest, unless specifically provided by statute, prejudgment interest cannot be treated as an essential element of "fair and just compensation."

Defendants cite only one case where an Illinois court has addressed the issue of prejudgment interest in a wrongful death case, *Klepser v. Standard Service Refuse Disposal Co.*, No. 75 L 23749 (Circuit Court of Cook County May 8, 1980). In *Klepser*, the presumption of no prejudgment interest in the absence of a statute was applied in a wrongful death case. The Circuit Court of Cook County stated:

There is nothing in the Wrongful Death Statute that authorizes judicial imposition of prejudgment interest.

The statute is silent on the subject. When no claim of bad faith is made, statutory silence on the question of interest is held in this state to "disclose a legislative intent to deny it." *Lakefront Realty Corp. v. Lorenz*, 19 Ill.2d 415, 423 [167 N.E.2d 236] (1960); *People v. Meyerowitz*, 61 Ill.2d 200, 335 N.E.2d 1 (1975). Also see *Russell v. Klein*, 46 Ill.App.3d 660 [5 Ill.Dec. 65, 361 N.E.2d 65] (1st Dist. 1977).

This is not a case where interest has been running on a liquidated sum rightfully belonging to the plaintiff. See *Morton Grove Park District v. American National Bank*, 78 Ill.2d 353 [35 Ill.Dec. 767, 399 N.E.2d 1295] (1980).

*Id.*, slip op. at 2. The court concluded that "[i]f prejudgment interest is to be awarded under circumstances such as these, the legislative branch must speak on the subject. It would be neither appropriate nor legally supportable for me to create a new element of damages in this case." *Id.*, slip op. at 3.

Because of several important distinctions between *Klepser* and the case at bar, we are unwilling to view *Klepser* as a definitive statement of Illinois law on prejudgment interest in wrongful death cases. First, in *Klepser*, the decedent lived for several days after the accident and the jury awarded damages for the decedent's pain and suffering during this period. The jury verdict did not separate damages for the decedent's pain and suffering from the compensation for pecuniary loss to plaintiff. Therefore, it was uncertain what the pecuniary losses were for the purpose of applying interest. Second, the claim for prejudg-

---

**10.** Several cases cited by plaintiffs as allowing prejudgment interest, despite the absence of a statute providing interest, actually were decided under the interest statute. In addition, those cases involved liquidated amounts. For example, in *First Nat'l Bank Co. of Clinton v. Ins. Co. of North America*, 606 F.2d 760 (7th Cir. 1979), this court, applying Illinois law, found that in an action on a bankers blanket bond, interest was allowable since the damages suffered by plaintiff were liquidated. We stated the Illinois rule as follows:

[I]f the amount of a claim can be ascertained, or is capable of ascertainment by mere calculation or computation, it is liquidated; if

judgment, discretion, or opinion, as distinguished from calculation or computation is required to determine the amount of the claim, it is unliquidated.

600 F.2d at 769–770.

Even if we concede that wrongful death damages are capable of ascertainment at the date of death, that ascertainment cannot be accomplished by "mere calculation or computation." See, e. g., *Dooley v. Darling*, 26 Ill.App.3d 342, 324 N.E.2d 684, 696 (1975) ("the award of damages in a wrongful death action is not subject to scientific computation and, consequently, is held to be a matter for jury determination").

ment interest was raised for the first time at the post-trial stage. While the judge assumed, for purposes of that opinion, that the issue could be raised without prior pleading or contention, we cannot be sure that the result would have been the same if the issue had been raised in time to instruct the jury appropriately. Finally, we do not have the necessary information, such as jury instructions and a record of trial testimony, to determine how the $500,000 jury verdict was calculated. As discussed in part IV of this opinion, the method of damage calculation determines the appropriateness of the adjustment that has been referred to here as prejudgment interest.

Defendants have cited no cases other than *Klepser* that squarely hold that prejudgment interest is unavailable as an element of compensation in wrongful death actions. Rather, defendants rely on the rule, discussed above, that silence on the question of interest in the Illinois Wrongful Death Act discloses a legislative intent to deny it.

Plaintiffs' construction of the Wrongful Death Act, like defendants', presents no cases directly on point. Plaintiffs argue that the Wrongful Death Act has been broadly construed by Illinois courts to achieve just results, and that an Illinois court would do so here. But plaintiffs' argument is based on cases which were not brought under the Wrongful Death Act. Illinois courts have been liberal in expanding the common law right to recover pecuniary losses not explicitly recoverable under the Wrongful Death Act. *See Graul v. Adrian*, 32 Ill.2d 345, 205 N.E.2d 444 (1965); *Saunders v. Schultz*, 20 Ill.2d 301, 170 N.E.2d 163 (1960) (funeral expenses). But damages under the Wrongful Death Act itself have been strictly limited to pecuniary, as opposed to punitive, damages. Consequently, we are not free to award damages that cannot be characterized as pecuni-

ary. *See In re Chicago Air Crash*, 644 F.2d 594, 605–606 (7th Cir. 1981).

As discussed in Part II of this opinion, our holding here must be based on Illinois law. Despite plaintiffs' exhaustive argument, we do not find that an Illinois court would award prejudgment interest as a separate element of damages in a wrongful death case. But, if the so-called "prejudgment interest" awarded here was not truly prejudgment interest, but was actually an element of "fair and just compensation" specifically allowed under the Wrongful Death Act, then the award here is consistent with Illinois law. Thus, before reaching any conclusion under the Wrongful Death Act, we must examine the precise nature of the damages in issue in this case and in cases which follow the general rule against prejudgment interest.

### C

In cases reciting the rule against prejudgment interest, the measurement of *compensatory* damages does not involve a "present value" calculation. Therefore, the compensatory damages could not have included the type of interest awarded here. For example, in *North Shore Marine, Inc. v. Engel*, 81 Ill.App.3d 530, 36 Ill.Dec. 548, 401 N.E.2d 269 (1980), an action for wrongful conversion of a boat, the parties conceded that the proper measure of damages was "fair market value of the goods at the time of the conversion." 36 Ill.Dec. at 552, 401 N.E.2d at 273. The court held that an award which exceeded that amount could not be supported by calling the excess prejudgment interest. This case implies only that if the correct measure of damages in a wrongful death case were present value at date of *death* rather than *trial*, any amount more than present value at date of death would have to be considered interest, rather than compensation, and therefore should not be allowed.[11]

---

11. In other cases cited by defendants where prejudgment interest was not allowed, the statutes fixing compensation similarly did not provide for a "present value" calculation. For example, taxpayers are not entitled to interest on tax refunds in the absence of an interest provision in Illinois tax statutes. *Lakefront Realty Corp. v. Lorenz*, 19 Ill.2d 415, 167 N.E.2d 236, 240–241 (1960); *Newport v. Foxworthy*, 71 Ill.App.3d 438, 389 N.E.2d 898, 900–

In addition, we find that the Illinois rule against prejudgment interest is not an absolute bar to adjustment of damages awards where appropriate. The Illinois Supreme Court recently held that despite the absence of a specific interest provision in the Eminent Domain Act, when a condemnation award is deposited with the county treasurer during the pendency of the condemnee's appeal, and the county treasurer deposits the award in an interest bearing account, the condemnee must receive the full amount of money earned on the sum deposited with the county treasurer. *Morton Grove Park District v. American National Bank*, 78 Ill.2d 353, 399 N.E.2d 1295 (1980).[12] The court distinguished *Lakefront Realty Corp. v. Lorenz*, 19 Ill.2d 415, 167 N.E.2d 236 (1960), and similar cases stating the rule against prejudgment interest as "cases in which the county had a legitimate claim to money that had been paid by the claimants, who were not entitled to a refund of the same until an adjudication of their claims had been made and a refund order entered." 399 N.E.2d at 1300. A condemnation award is the property of the condemnee even while deposited with the county treasurer pending appeal, so the county treasurer's keeping the interest earned constituted a taking of private property for public use. *Id.* *Morton Grove* is relevant to the case at bar because it demonstrates that the Illinois Supreme Court is willing to interpret a damage statute in order to provide fair and just compensation, even if a portion of that compensation can be labeled as "prejudgment interest," and the statute does not specifically provide for interest.

In summary, we have concluded that Illinois law generally does not allow prejudgment interest unless provided by statute. The interest statute does not apply to this case because it, as a general rule, provides for interest only on liquidated amounts. The Wrongful Death Act does not explicitly provide for prejudgment interest. But only one unreported and distinguishable lower state court case holds that prejudgment interest is not allowed in a wrongful death action. Other cases where prejudgment interest was not allowed give no guidance as to whether an adjustment for past losses may be included in the compensatory portion of a wrongful death award.

## IV

Despite the foregoing discussion rejecting prejudgment interest as a separate element of damages, the measure of compensatory damages in wrongful death cases unquestionably does involve some form of interest in the determination of "present value." Prejudgment interest *per se* is not allowable as a separate element of a wrongful death damages award, but use of interest is implicit in the calculation of the present value of plaintiff's pecuniary loss as of the date of trial.

The question here, then, is how plaintiff's damages ought to be calculated. If the calculation is properly computed, it is possible to resolve both plaintiff's and defendants' objections. Plaintiff argues that she would be harmed by delay between the accident and trial if prejudgment interest is not allowed. Defendants claim that they would be punished for asserting their right to a trial on damages if prejudgment interest is allowed. But neither plaintiffs nor

901 (1979). *See also Gonzalez v. Danaher*, 30 Ill.App.3d 992, 332 N.E.2d 603 (1975) (no interest on money deposited to secure bail bond); *People v. Meyerowitz*, 61 Ill.2d 200, 335 N.E.2d 1 (1975) (no interest on refund of fines and costs paid as a result of voided convictions).

In some cases cited by defendants, disallowance of prejudgment interest depended on the nonapplicability of the interest statute, and not upon the calculation of damages under a separate damages statute. *Stevenson v. ITT Harper, Inc.*, 51 Ill.App.3d 568, 366 N.E.2d 561, 570–71 (1977); *Russell v. Klein*, 46 Ill.App.3d

660, 5 Ill.Dec. 65, 69, 361 N.E.2d 65, 69 (1977); *Hamilton v. American Gage & Machine Corp.*, 35 Ill.App.3d 845, 342 N.E.2d 758, 764–66 (1976). We already have held that the interest statute does not apply here.

12. In *Locasio v. Rosewell*, 50 Ill.App.3d 704, 8 Ill.Dec. 563, 365 N.E.2d 949 (1977), cited by defendants, the Illinois Appellate Court reached the opposite result than that of the Illinois Supreme Court in the later *Morton Grove* case. Thus, *Locasio* is no longer good law.

defendants will be unjustly enriched if the correct formula is used to calculate wrongful death damages.

The measure of damages in a wrongful death action is set out in the Illinois Pattern Jury Instructions 2d ("IPI 2d"). The relevant IPI 2d instructions given by the court here were essentially 31.04, "Measure of Damages—Wrongful Death—Adult—Lineal Next of Kin Surviving"; 31.07, "Measure of Damages—Wrongful Death—Factors Excluded"; 34.03, "Death Case—Discount of Future Damages"; and 34.05, "Mortality Tables as Evidence of Damages—Death Case." [13]

Instruction 31.04 of the IPI 2d provides in part:

> If you decide for the plaintiff on the question of liability you must then fix the amount of money which will reasonably and fairly compensate the [widow and lineal next of kin, e. g., daughter] of the decedent, for the pecuniary loss proved by the evidence to have resulted to [him] [her] [them] from the death of the decedent.

Instruction 34.03 tells the jury how to calculate the pecuniary loss so as to fairly compensate the plaintiff for the loss recognized in 31.04:

> If you find for the plaintiff, then in assessing damages you may consider how long the [widow] [and] [next of kin] would be likely to have received pecuniary benefits from the decedent, considering how long he was likely to have lived and how long [she] [they] are likely to live.
>
> In calculating the amount of these pecuniary benefits you must not simply multiply the life expectancies by the annual benefits. Instead, you must determine their present cash value. *"Present cash value" means the sum of money needed now, which, together with what that sum*

*will earn in the future, will equal the amounts of the pecuniary benefits at the times in the future when they would have been received.*

(emphasis added) Instruction 34.05 contains the identical definition of "present cash value."

Calculation of "present value" involves discounting future income to the date of trial. A typical explanation of this discounting is found in *Baird v. Chicago, Burlington & Quincy R.R. Co.*, 63 Ill.2d 463, 349 N.E.2d 413 (1976), where the Illinois Supreme Court approved the admission of the testimony of an economist, who testified as an expert for plaintiffs on the subject of damages for the deaths of two teenagers. The expert testified that:

> we're not going to wait, as the circumstances clearly reflect, for someone to earn these dollars each year for the next forty years. We are going to try to have to ascertain what those earnings would have been, then discount them, or *bring them back to the present* and say what they would be worth now, if there was going to be a cash or a lump sum payment.

349 N.E.2d at 415 (emphasis added).

Similarly, in *Allendorf v. Elgin, Joliet & Eastern Ry. Co.*, 8 Ill.2d 164, 133 N.E.2d 288 (1956), *cert. denied*, 352 U.S. 833, 77 S.Ct. 49, 1 L.Ed.2d 53 (1956), another case dealing with an Illinois wrongful death award, the court cited with approval instructions given by the trial court concerning damages.[14] The instructions included the following:

> "The jury is instructed that if you find the .plaintiff is entitled to recover from the defendant in this action, that then the plaintiff is entitled to recover such damages as will justly and adequately compensate her and the surviving dependent children of the deceased for the pecuniary

---

13. *See* note 1, *supra*, for that portion of the charge dealing with discounting to present value and with prejudgment interest.

14. *Allendorf* was a wrongful death case brought under the Federal Employers' Liability Act, but the court's discussion of wrongful

death damages does not depend on that fact. *Allendorf* is cited by Illinois courts as giving the correct measure of damages in Illinois wrongful death actions. *See Baird v. Chicago, Burlington & Quincy R.R. Co.*, 63 Ill.2d 463, 349 N.E.2d 413, 416 (1976).

loss, past and future, sustained by them on account of his death.

. . .

In determining the amount of damages, if any, to be awarded for loss of future financial contribution to the widow and children, you are instructed that you are to determine the present cash value of such future lost contributions.

. . .

The present cash value of the benefits of which the widow and children have been deprived on account of the death of deceased, making adequate allowance for the earning power of money, is the proper measure of recovery."

133 N.E.2d at 293.

These cases and instructions indicate that present cash value is to be calculated at the date of *trial.* But in this case, the jury was instructed to calculate present value as of the date of Craig Valladares' *death.*[15] The parties agreed to use the date of death, rather than date of trial, to calculate present value because the evidence in the trial gave life expectancy and income estimates based on the date of death.[16] It is not surprising that the defendants readily agreed to the date of death instruction, since it gave them an extra thirteen months of discount on the decedent's future income stream. This formulation is equivalent to actually subtracting interest from what the total award would have been if future income had been discounted to trial instead of death.

To explain this critical point, we use a simple example, where only *future* damages are at issue. Assume that a passenger's life expectancy was only two years at the date of the crash and that this person was expected to contribute $10,000 to his family in each of those two years. Assume also that the trial takes place one year after death and that the interest rate is 10%, compounded annually. Furthermore, assume that the family would receive the decedent's contribution at the end of the year in which he earned it.

If the award is discounted to the date of death, the decedent's family should receive an amount which, had they received it on the date of death, would yield (assuming interest was earned on it from the date of death) the two yearly $10,000 contributions which decedent would have made. This amount, using a discount rate of 10%, would be $17,356.[17] If the award is discounted to the date of the trial, the family will receive $19,091. Ten thousand dollars of that award is for the year of income that would have been received at that time (one year after death) had decedent lived. The remaining $9,091 would earn one year's interest and yield the projected contribution of $10,000 for the second year after decedent's death.

---

**15.** *See* note 1, *supra.* The italicized portions of the instructions set out there show that the jury was instructed to use the date of death in calculating present value.

**16.** On June 23, 1980, without the jury present, MDC's counsel made the following statement:

MR. BARRY: Your Honor, on behalf of McDonnell Douglas and Mr. Allen on behalf of American Airlines, we are willing for the purpose of this case to let the evidence stand as it is, to submit an instruction which will instruct the jury on the basis of the evidence; namely, that you are to compute these figures as of the date of death. We will not urge that portion of the damage instruction as error on the instruction, nor will we urge with respect to prejudgment interest any error by the Court with respect to that one issue.

We intend, as this Court knows, to frame as clearly as we can the issue of prejudgment interest.

Now, that has nothing to do with this instruction nor the position we are taking. We are waiving, for the purpose of the appeal in this case, that issue as to what date will be applied with respect to the discounting of future earnings by substituting a date that conforms with the evidence, namely, the date of death.

Tr. of June 23, 1980 at 274–75.

**17.** If $17,356 is received on the date of the crash, after one year at 10% interest the lump sum will be $19,092. The family will then withdraw $10,000 as the first year's contribution. The remaining $9,092 will earn another year's interest, and $10,001 will remain at the end. (The extra $1 is just the effect of rounding off our figures here.)

The way the award was calculated in the Valladares case was as if $17,356, present value at the date of death, was given to the family in our example at the date of *trial*. Obviously, if the family withdraws $10,000 at the trial date (for the previous year's contribution), they will not have another $10,000 at the end of the next year if the $7,356 balance is invested at 10%. Thus, they are not adequately compensated for their loss.

The question then becomes how to adjust an award that represents "present value at date of death" when it is actually received at the date of judgment. The answer in our example is to add one year of "interest" to "present value at death" in order to reverse the extra year of discounting (assuming, as we do, that the "interest rate" and "discount rate" are the same). Adding one year of interest at 10% to $17,356 gives $19,092—exactly the amount of the present value at the date of trial. (The $1 difference is caused by rounding.)

■ Of course, in this example we have made some simplifying assumptions, such as a 10% interest rate compounded annually and a 10% discount rate. But regardless of the numbers used, the end result is that in order to adequately compensate plaintiffs, the decedent's projected stream of future earnings must be either (1) discounted to trial or (2) discounted to death, with an adjustment to bring the "death value" to "present value."

By assuming that the family would receive decedent's contribution at the end of each year he would have lived and by assuming trial one year after death, we have demonstrated the effect of varying the date of the "present value" calculation. We eliminated the issue of prejudgment interest on past losses by assuming that decedent would not have made any contributions until the time of trial, one year after his death. But in most cases, a decedent's contribution to his family for the first year would have been a flow of income during the period from the crash date to the trial. Assuming such a flow of income presents the question of whether interest is due on past losses—on the amounts of decedent's probable contributions that were not recovered between death and trial. We find that the reasons for augmenting these "past losses" are exactly the same as those for discounting "future losses." As stated in *Moore-McCormack Lines, Inc. v. Richardson*, 295 F.2d 583 (2d Cir. 1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962), an action under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 761–768,[18] "[i]f it be only fair to discount sums paid now on account of future loss which would not be due until some years in the future, ..., it is, by the same token, inequitable not to make appropriate compensation for delay in discharging the obligation." 295 F.2d at 594. In *Moore-McCormack* the future damages had been discounted to the trial date. Consequently, the allowance of "interest" was just a symmetrical treatment of past and future losses in order to calculate present value.[19]

The court in *Moore-McCormack* explained why this type of "prejudgment interest" usually is not explicitly provided for in the jury instructions for calculation of the present value of plaintiff's loss. The reason

**18.** The Death on the High Seas Act, 46 U.S.C. §§ 761–768, covers wrongful death resulting from accidents (including air crashes) on the high seas. Like the Illinois Wrongful Death Act, DOHSA does not explicitly provide for prejudgment interest, but calls for "fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought." 46 U.S.C. § 762.

**19.** The court in *Moore-McCormack* explained the proper adjustment for past loss (which it refers to as "interest") in terms of the discount rate:

> Since the allowance for loss of future benefits to the dependents of the four deceased men are discounted at 4%, it would seem appropriate for the district judge also to compute interest at a 4% rate on the allowances for pecuniary losses sustained prior to decree. Of course interest on sums past due will not run from the date of death, but from the several dates at which the sums would have accrued.
>
> 295 F.2d at 595.

for this silence is that juries make allowance for delay in compensation awards:

> In any event, no one would be so naive as to suppose that juries do not throw into the scales the years that a plaintiff may have had to wait before his case can be heard by a jury. The practical reason why the courts in jury cases have refused to grant moratory interest may therefore be found in the judicial recognition that a jury usually makes some allowance for loss caused by delay. Likewise judges doubtless make some allowance for loss because of the law's delay. It would seem to us to be better to recognize this and have the computation made on a basis which is known and understood.

495 F.2d at 594 (footnote omitted).

■ In this case, if the jury had been instructed only to discount *future* losses, it might have made allowance for delay in receiving *past* losses. But, the jury was instructed to discount plaintiff's entire loss to date of *death*. We must assume that the jury followed the court's instruction. *Scully v. Otis Elevator Co.*, 2 Ill.App.3d 185, 275 N.E.2d 905, 913 (1971); *Danile v. Oak Park Arms Hotel, Inc.*, 55 Ill.App.2d 2, 8, 203 N.E.2d 706, 709 (1965). Thus, we must assume that the unadjusted jury award of $250,000 contained no allowance for delay.

The formula used in this case is the same as the formula used in *National Airlines v. Stiles*, 268 F.2d 400 (5th Cir. 1959), *cert. denied*, 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959), another DOHSA case. In *Stiles*, as in this case, the unadjusted award was based on decedent's life and earnings expectancy at his death and was discounted to death, so there was no chance to make an implicit adjustment for delay. The court stated:

> It is quite clear that with as many uncertain factors as there are for consideration by the court in arriving at the fair value of plaintiff's pecuniary loss the length of time to the date of judgment may sometimes be taken into consideration by the

court in determining the amount of its award. In such a case the court should not, of course, allow interest on such amount. *Here, however, the court made plain its finding that the award was a fair measure of Mrs. Stiles's pecuniary loss as of the date of her husband's death, and interest on the amount was awarded to make her recovery complete.*

268 F.2d at 405 (emphasis added).

The *Stiles* court explicitly found the "interest" given to be part of plaintiff's "fair and just compensation," and not an addition to that amount:

> [T]he language of the statute here for construction clearly allows interest from the date of death as an element necessary to provide "fair and just compensation for the pecuniary loss sustained," where the trial court clearly showed that no such increment was included in the principal award.

268 F.2d at 406. In this case, the "present value at death" calculation of $250,000 can be considered the unadjusted, "principal" award, and the total of $277,500 can be considered the adjusted award, compensating plaintiff in the amount of the present value of her pecuniary losses, both past and future, as contemplated by the Illinois Wrongful Death Act.

We realize that the district court characterized the adjustment award as interest rather than an adjustment of the "present value at death" calculation. But it seems clear from the instructions themselves that full compensation was what was intended.[20] The instructions emphasized the fact that the 39½ year figure used by the parties was an estimate of Craig Valladares' life expectancy at the time of his death. The jury was instructed to determine "how much interest should be paid over and above the present value as of the date of his death of the compensation of which Jewel Valladares and her daughter were deprived by virtue of his death." In other words, the

20. *See* note 1, *supra*.

■

$250,000 represents the "present value at death" of plaintiff's compensation, and the total award of $277,500 represents the "present value at trial." As we have discussed, this "present value at trial" represents the true compensatory damages figure. The so-called "prejudgment interest" is just an element of the formula for calculation of the compensatory damages.

Here, the "interest" adjustment was made on the entire amount calculated to be the present value of plaintiff's loss at Craig Valladares' death. As discussed above, the parties agreed to the use of date of death to conform to the evidence and, supposedly, to frame the issue of prejudgment interest for this court. Neither party appealed the unadjusted award of $250,000. Defendants contend that since plaintiff did not file a conditional cross appeal asking for recalculation of the unadjusted award in the event that the prejudgment interest was struck, we must strike the award of $27,500, since it was mislabeled. But under the present value instructions given by the court, it appears the proper compensatory award found by the jury was the total of $277,500. To strike the award because of a mere technical mislabeling would ignore the actual damage calculation formula used by the court. Such a decision would award plaintiff less than she would have received if the jury had been instructed to calculate the present value of damages as of the trial, which is the correct measure under Illinois law. In other words, the outcome here, after discounting to the date of death and adding prejudgment interest, is substantially the same outcome as if damages had been correctly computed by calculating present value at the date of trial.

## V

Finally, the parties claim that this case is a test case on the issue of prejudgment interest for the other cases under the Illinois Wrongful Death Act arising out of this DC–10 crash. But, because the damages here were discounted to death, rather than

trial, we emphasize that the instructions by the trial court in this case cannot be the model for future wrongful death actions.

In future actions, the court should instruct the jury to calculate the damages for future losses according to the IPI 2d instructions discussed in part IV. Future losses should be discounted to the date of trial. The jury should also be instructed to calculate the present value of the amounts that plaintiff would have received from decedent between death and trial. Augmenting the amount of income flow lost between death and trial is part of "fair and just compensation" just as discounting the income flow after trial is part of "fair and just compensation," although neither calculation is mentioned in the Wrongful Death Act. The mechanism of the adjustment to present value is simply common sense and some mathematics. The difficulty comes in supplying appropriate dollar amounts for the lost income flow and an appropriate adjustment factor. This task, of course, is left to the jury, which can be guided by the testimony of experts. But the formula should be clearly spelled out by the court in terms of present value, not prejudgment interest. Once this calculation is done for present value at *trial* of both past and future losses, plaintiffs' arguments for prejudgment interest as a separate element of damages disappear.

For the reasons detailed above, the judgment is

AFFIRMED.