MONESSEN SOUTHWESTERN RAILWAY CO.
*v.* MORGAN

No. 86–1743.   Argued February 22, 1988—Decided June 6, 1988

WHITE, J., delivered the opinion of the Court, in which BRENNAN, STEVENS, SCALIA, and KENNEDY, JJ., joined, in Parts I, II–A, and III of which MARSHALL and BLACKMUN, JJ., joined, and in Parts I and II of which REHNQUIST, C. J., and O'CONNOR, J., joined. BLACKMUN, J., filed an opinion concurring in part and dissenting in part, in which MARSHALL, J., joined, *post*, p. 342. O'CONNOR, J., filed an opinion concurring in part and dissenting in part, in which REHNQUIST, C. J., joined, *post*, p. 350.

*Paul A. Manion* argued the cause for appellant. With him on the briefs was *James G. McLean.*

*Thomas Hollander* argued the cause for appellee. With him on the brief was *Michael F. Campanella.**

JUSTICE WHITE delivered the opinion of the Court.

This case concerns the application of state-law rules affecting the measure of damages in an action brought in state court under the Federal Employers' Liability Act (FELA), 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.*

I

Appellee was employed by appellant as a railroad brakeman and conductor. In August 1977, appellee fell while alighting from a railroad car and suffered a permanent injury to his back. He returned to work in February 1979 in the less physically demanding position of radio and supply clerk.

Appellee brought an FELA action in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging that his fall was attributable to appellant's negligence. He claimed that his future earning power had been impaired as a result of his injury because he could not obtain certain incentive and shift differential payments in his new position.

The trial judge refused to instruct the jury that any damages award for loss of future earnings would have to be reduced to present value. Instead, she informed the jury that "[t]he law now provides that there need not be such a reduction." App. 61. The judge apparently was referring to the Pennsylvania Supreme Court's decision in *Kaczkowski* v. *Bolubasz,* 491 Pa. 561, 583, 421 A. 2d 1027, 1038–1039 (1980), which had instructed state courts to cease discounting future lost earnings to present value because "as a matter of law . . . future inflation shall be presumed equal to future interest rates with these factors offsetting."

The jury found in favor of appellee and awarded damages of $125,000. The trial judge assessed an additional $26,712.50 as prejudgment interest pursuant to Rule 238 of the Pennsyl-

*Betty Jo Christian* and *Charles G. Cole* filed a brief for the Association of American Railroads as *amicus curiae.*

vania Rules of Civil Procedure. Rule 238 requires state courts in personal injury actions to "add to the amount of compensatory damages . . . , damages for delay at ten (10) percent per annum, not compounded," from "the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later," to the date of the verdict.[1] The judge rejected appellant's contention that Rule 238 could not be applied to FELA actions.

A three-judge panel of the Pennsylvania Superior Court affirmed. 339 Pa. Super. 465, 489 A. 2d 254 (1985).

The Pennsylvania Supreme Court granted appellant's petition for allowance of appeal and subsequently affirmed by a narrow margin. 513 Pa. 86, 518 A. 2d 1171 (1986).

The court characterized Rule 238 as a mere "rule of procedure" designed to encourage meaningful settlement negotiations and thereby alleviate congestion in the trial courts. *Id.*, at 98–99, 518 A. 2d, at 1177. The court concluded that, as neither the "worthy goal" nor the specific provisions of Rule 238 contravened the purposes and provisions of the FELA, the Pennsylvania courts could apply Rule 238 to award prejudgment interest in FELA cases as well as in cases involving only state law. *Ibid.*

The court recognized that whether the trial judge had properly refused to instruct the jury to discount future damages to present value, and instead applied the so-called "total offset" method, was a question of federal law. See *St. Louis Southwestern R. Co.* v. *Dickerson,* 470 U. S. 409, 411 (1985) *(per curiam).* The court noted our discussion of a Federal District Court's use of Pennsylvania's total offset rule in *Jones & Laughlin Steel Corp.* v. *Pfeifer,* 462 U. S. 523 (1983), a case brought under the Longshoremen's and Harbor

---

[1] Rule 238 provides that, if the defendant made a pretrial settlement offer and the plaintiff's recovery does not exceed 125 percent of that offer, the court cannot award "delay damages" for the period after the offer was made.

Workers' Compensation Act (LHWCA), 33 U. S. C. § 904. We held in *Pfeifer* that "whatever rate the District Court may choose to discount the estimated stream of future earnings, it must make a deliberate choice, rather than assuming that it is bound by a rule of state law." 462 U. S., at 552–553. Here, the trial judge's use of the total offset rule was held to have been permissible under *Pfeifer* because the reviewing court had itself "deliberately selected" that rule in *Kaczkowski* v. *Bolubasz* "after a thorough consideration of various present worth theories and rules." 513 Pa., at 92–93, 518 A. 2d, at 1174. Nor did the court find any inconsistency between the trial judge's use of the total offset rule and our holding in *Dickerson* that "an utter failure to instruct the jury that present value is the proper measure of [an FELA] damages award is error." 470 U. S., at 412. Here, reasoned the court, "the trial judge did instruct the jury on present value by charging on the total offset method." 513 Pa., at 94–95, 518 A. 2d, at 1175.[2]

We noted probable jurisdiction, 484 U. S. 813 (1987), and now reverse.

## II

We first consider whether state courts may award prejudgment interest pursuant to local practice in actions brought under the FELA.

---

[2] The three dissenting justices maintained that the trial court's award of "delay damages" under Rule 238 contravened federal substantive law and "undermine[d] the national uniformity FELA was designed to achieve." 513 Pa., at 102, 518 A. 2d, at 1179. They dismissed as "pure sophistry" the majority's assertion that Rule 238 was a mere procedural device, observing that "[a]ny rule which increases a damage award by twenty-five percent has an undeniably material effect on damages." *Id.*, at 101–102, 518 A. 2d, at 1179. In addition, said the dissenters, the trial judge's refusal to instruct the jury to discount any future damages to present value was inconsistent with federal law. The trial judge had "blindly applied" the Pennsylvania total offset rule, they asserted, and had not made the "deliberate choice" among present value theories required by *St. Louis Southwestern R. Co.* v. *Dickerson*, 470 U. S. 409 (1985). 513 Pa., at 100, 518 A. 2d, at 1178.

## A

State courts are required to apply federal substantive law in adjudicating FELA claims. *Dickerson, supra,* at 411; *Chesapeake & Ohio R. Co.* v. *Kuhn,* 284 U. S. 44, 46–47 (1931). It has long been settled that "the proper measure of damages [under the FELA] is inseparably connected with the right of action," and therefore is an issue of substance that "must be settled according to general principles of law as administered in the Federal courts." *Chesapeake & Ohio R. Co.* v. *Kelly,* 241 U. S. 485, 491 (1916); see also *Dickerson, supra,* at 411; *Norfolk & Western R. Co.* v. *Liepelt,* 444 U. S. 490, 493 (1980).

The question of what constitutes "the proper measure of damages" under the FELA necessarily includes the question whether prejudgment interest may be awarded to a prevailing FELA plaintiff. Prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered. *West Virginia* v. *United States,* 479 U. S. 305, 310, and 310–311, n. 2 (1987); *General Motors Corp.* v. *Devex Corp.,* 461 U. S. 648, 655–656 (1983); *Poleto* v. *Consolidated Rail Corporation,* 826 F. 2d 1270, 1278 (CA3 1987); *Wilson* v. *Burlington Northern R. Co.,* 803 F. 2d 563, 566 (CA10 1986) (McKay, J., concurring), cert. denied, 480 U. S. 946 (1987). Moreover, prejudgment interest may constitute a significant portion of an FELA plaintiff's total recovery. Here, for example, the trial court's award of $26,712.50 in prejudgment interest under Rule 238 increased appellee's total recovery by more than 20 percent. Accordingly, the Pennsylvania courts erred in treating the availability of prejudgment interest in FELA actions as a matter of state law rather than federal law.[3]

---

[3] Other courts have uniformly recognized that the availability of prejudgment interest under the FELA is a question of federal law. See, e. g., *Poleto* v. *Consolidated Rail Corporation,* 826 F. 2d 1270, 1274 (CA3 1987); *Louisiana & Arkansas R. Co.* v. *Pratt,* 142 F. 2d 847, 848 (CA5 1944); *Chicago, M., St. P. & P. R. Co.* v. *Busby,* 41 F. 2d 617, 619 (CA9 1930); *Carmouche* v. *Southern Pacific Transportation Co.,* 734 S. W. 2d

The Pennsylvania courts cannot avoid the application of federal law to determine the availability of prejudgment interest under the FELA by characterizing Rule 238 as nothing more than a procedural device to relieve court congestion. In *Dice* v. *Akron, C. & Y. R. Co.*, 342 U. S. 359 (1952), the Ohio courts had applied a state procedural rule in an FELA action that permitted the judge rather than the jury to resolve factual questions as to whether a release had been fraudulently obtained. We reversed on the ground that "the right to trial by jury is too substantial a part of the rights accorded by the Act to permit it to be classified as a mere 'local rule of procedure' for denial in the manner that Ohio has here used." *Id.*, at 363. See also *Brown* v. *Western R. Co. of Alabama*, 338 U. S. 294, 298–299 (1949). Similarly, prejudgment interest constitutes too substantial a part of a defendant's potential liability under the FELA for this Court to accept a State's classification of a provision such as Rule 238 as a mere "local rule of procedure."[4] We therefore turn to the issue whether federal law authorizes awards of prejudgment interest in FELA actions.

B

Neither the FELA itself nor the general federal interest statute, 28 U. S. C. § 1961, makes any mention of prejudgment interest. It is true that Congress' silence as to the availability of interest on an obligation created by federal law does not, without more, "manifes[t] an unequivocal congres-

46, 47 (Tex. App. 1987); *Wicks* v. *Central R. Co.*, 129 N. J. Super. 145, 147, 322 A. 2d 488, 489, cert. denied, 66 N. J. 317, 331 A. 2d 17 (1974); *Mobile & O. R. Co.* v. *Williams*, 219 Ala. 238, 249, 121 So. 722, 731 (1929).

[4] The Court of Appeals for the Third Circuit recognized in an FELA action that Rule 238 is substantive in nature. *Poleto* v. *Consolidated Rail Corporation, supra*, at 1274. Indeed, even the Pennsylvania Supreme Court has acknowledged that Rule 238 has "both procedural and substantive elements." *Laudenberger* v. *Port Authority of Allegheny County*, 496 Pa. 52, 66, 436 A. 2d 147, 154 (1981).

sional purpose that the obligation shall not bear interest." *Rodgers* v. *United States*, 332 U. S. 371, 373 (1947).

We can discern a sufficiently clear indication of legislative intent with regard to prejudgment interest under the FELA, however, when we consider Congress' silence on this matter in the appropriate historical context. In 1908, when Congress enacted the FELA, the common law did not allow prejudgment interest in suits for personal injury or wrongful death. See C. McCormick, Law of Damages § 56 (1935); 1 T. Sedgwick, Measure of Damages § 316 (9th ed. 1912).[5] This was the rule in the federal courts. *Pierce* v. *United States*, 255 U. S. 398, 406 (1921);[6] *Mowry* v. *Whitney*, 14 Wall. 620, 653 (1872); see also *Poleto, supra*, at 1276, 1278; *Wilson, supra*, at 565; *Louisiana & Arkansas R. Co.* v. *Pratt*, 142 F. 2d 847, 848 (CA5 1944). Congress expressly dispensed with other common-law doctrines of that era, such as the defense of contributory negligence, see 45 U. S. C. § 53, in order "to provide liberal recovery for injured workers" under the FELA. *Kernan* v. *American Dredging Co.*, 355 U. S. 426, 432 (1958). But Congress did not deal at all with the equally well-established doctrine barring the recovery of prejudg-

---

[5] As JUSTICE BLACKMUN's dissent concedes, the authorities recognized even two decades after the enactment of the FELA that "interest usually was not awarded" in personal injury actions involving claims for both economic and noneconomic injury. *Post*, at 347 (citing McCormick § 56, p. 224).

[6] In *Pierce*, the Government obtained a criminal judgment against a corporation, and a fine was imposed. The Government then brought a civil action against the corporation's shareholders to satisfy the judgment. The Court held that the Government was entitled to interest only from the date of the civil judgment and not from the date of the prior criminal judgment. It was observed that "[a]t common law judgments do not bear interest; interest rests solely upon statutory provision." 255 U. S., at 406. Accordingly, as the only applicable statute provided for postjudgment interest in civil actions, the Government could not obtain interest prior to the date of the civil judgment either as postjudgment interest in the criminal action or as prejudgment interest in the civil action.

ment interest, and we are unpersuaded that Congress intended to abrogate that doctrine *sub silentio*.[7]

Moreover, we have recognized that Congress' failure to disturb a consistent judicial interpretation of a statute may provide some indication that "Congress at least acquiesces in, and apparently affirms, that [interpretation]." *Cannon* v. *University of Chicago*, 441 U. S. 677, 703 (1979); see also *Gulf Oil Corp.* v. *Copp Paving Co.*, 419 U. S. 186, 200–201 (1974); *Flood* v. *Kuhn*, 407 U. S. 258, 283–284 (1972). The federal and state courts have held with virtual unanimity over more than seven decades that prejudgment interest is not available under the FELA. See, *e. g.*, *Poleto*, 826 F. 2d, at 1279; *Wilson*, 803 F. 2d, at 566; *Kozar* v. *Chesapeake & Ohio R. Co.*, 449 F. 2d 1238, 1244 (CA6 1971); *Pratt, supra,* at 848–849; *Chicago, M., St. P. & P. R. Co.* v. *Busby*, 41 F. 2d 617, 619 (CA9 1930); *Carmouche* v. *Southern Pacific Transportation Co.*, 734 S. W. 2d 46, 47 (Tex. App. 1987); *Melin* v. *Burlington Northern R. Co.*, 401 N. W. 2d 418, 420 (Minn. App. 1987); *Wicks* v. *Central R. Co.*, 129 N. J. Super. 145, 147, 322 A. 2d 488, 489, cert. denied, 66 N. J. 317, 331 A. 2d 17 (1974); *Murmann* v. *New York, N. H. & H. R. Co.*, 258 N. Y. 447, 450, 180 N. E. 114, 115 (1932) *(per curiam);* *Mobile & O. R. Co.* v. *Williams*, 219 Ala. 238, 249, 121 So. 722, 731 (1929); *Bennett* v. *Atchison, T. & S. F. R. Co.*, 187 Iowa 897, 903–904, 174 N. W. 805, 807 (1919); *Grow* v. *Oregon Short Line R. Co.*, 47 Utah 26, 29, 150 P. 970, 971 (1915). Congress has amended the FELA on several occasions since 1908. See 36 Stat. 291 (1910); 53 Stat. 1404 (1939); 62 Stat.

---

[7] Similarly, the Court refused in an early FELA case to depart from the common-law rule that a right of action for personal injury was extinguished by the death of the injured party. See *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 67–68 (1913). The Court noted that the FELA did not expressly provide for the survival of the injured employee's right of action, and that state survival statutes were inapplicable because "[t]he question of survival is not one of procedure, 'but one which depends on the substance of the cause of action.'" *Id.*, at 67 (quoting *Schreiber* v. *Sharpless*, 110 U. S. 76, 80 (1884)).

989 (1948). Yet, Congress has never attempted to amend the FELA to provide for prejudgment interest.[8] We are unwilling in the face of such congressional inaction to alter the longstanding apportionment between carrier and worker of the costs of railroading injuries. If prejudgment interest is to be available under the FELA, then Congress must expressly so provide.[9]

## III

We turn now to the question whether the trial court acted consistently with federal law in instructing the jury not to discount appellee's future lost earnings to present value.

We have consistently recognized that "damages awards in suits governed by federal law should be based on present value." *Dickerson*, 470 U. S., at 412. The "self-evident" reason is that "a given sum of money in hand is worth more than the like sum of money payable in the future." *Kelly*, 241 U. S., at 489; see also *Dickerson, supra*, at 412. And, as

---

[8] Congress considered a proposal to authorize prejudgment interest under the general federal interest statute, 28 U. S. C. § 1961, during deliberations on the Federal Courts Improvement Act of 1982, Pub. L. 97–164, 96 Stat. 25. The proposal was omitted from the final legislation. S. Rep. No. 97–275, pp. 11–12 (1981).

[9] JUSTICE BLACKMUN's dissent does not recognize the obvious difference between the instant case and previous cases in which the Court allowed prejudgment interest on certain pecuniary losses. See, *e. g., General Motors Corp.* v. *Devex Corp.*, 461 U. S. 648, 654–656 (1983); *Jacobs* v. *United States*, 290 U. S. 13, 16–17 (1933); *Waite* v. *United States*, 282 U. S. 508, 509 (1931). In none of those cases did the plaintiff seek prejudgment interest on a cause of action arising under a statute that, like the FELA, was enacted at a time when prejudgment interest was generally unavailable on similar causes of action arising under the common law. The Court would have had no occasion in those cases to consider whether the Congress that adopted the statute under which prejudgment interest was sought intended to dispense *sub silentio* with a well-established common-law rule barring prejudgment interest on similar claims. Hence, we cannot accept the dissent's characterization of our analysis as a "departure from our normal inquiry into the relation between an allowance of interest and Congress' purpose in creating [the underlying] obligation." *Post*, at 348.

*Kelly* and *Dickerson* demonstrate, the rule governs in FELA cases. Hence, a "failure to instruct the jury that present value is the proper measure of a damages award is error." 470 U. S., at 412.

Here, the trial court instructed the jury that although it "used to be" that juries were to reduce an award to "something called present worth," the law now provided that there need not be such a reduction. Tr. 701–702. The "law" referred to was the Pennsylvania Supreme Court's decision in *Kaczkowski* v. *Bolubasz*, 491 Pa. 561, 421 A. 2d 1027 (1980), which held that future inflation would be conclusively presumed to equal future interest rates and that state courts in Pennsylvania therefore were not to reduce damages to present worth. It was error for the court to have refused on the basis of this state rule to allow an FELA award to be reduced to present value, just as it was error for the court in *Pfeifer* to have failed to make "a deliberate choice" as to how an LHWCA award was to be reduced to present value and to have "assum[ed] that it [was] bound by a rule of state law." 462 U. S., at 553.

Under the Court's FELA cases, the jury has the task of making the present value determination. It was observed in *Kelly*, for example, that "it may be a difficult mathematical computation for the ordinary juryman to calculate interest on deferred payments, with annual rests, and reach a present cash value." 241 U. S., at 491. We declined to decide in that case "[w]hether the difficulty should be met by admitting the testimony of expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are worked out at various rates of interest and for various periods covering the ordinary expectancies of life." *Ibid.* We did not suggest that the difficulty could also be met by permitting the present value calculation to be made by the judge rather than the jury.

The question was addressed more directly two years later in *Louisville & Nashville R. Co.* v. *Holloway,* 246 U. S. 525

(1918), which held that an FELA defendant was not entitled to a jury instruction that the present value of future losses must as a matter of law be computed at the State's 6 percent legal interest rate. The state trial court had properly refused to give an instruction that "sought to subject the jury's estimate to [such a] rigid mathematical limitatio[n]." *Id.*, at 528.[10]

There is nothing in *Pfeifer* to suggest that the judge rather than the jury is to determine the discount rate in FELA actions. There, we repeatedly indicated that the present value calculation is to be made by the "trier of fact." See 462 U. S., at 534, 536, 538, 547–548, 550–551, n. 32. Of course, because *Pfeifer* was tried to the bench, the "trier of fact" in that case was a judge rather than a jury.

We do not mean to suggest that the judge in an FELA action is foreclosed from assisting the jury in its present value calculations. Indeed, because " '[t]he average accident trial should not be converted into a graduate seminar on economic forecasting,' " *id.*, at 548 (quoting *Doca* v. *Marina Mercante Nicaraguense, S. A.*, 634 F. 2d 30, 39 (CA2 1980)), the judge has an obligation to prevent the trial proceedings on the

---

[10] A similar issue was presented in *Vicksburg & Meridian R. Co.* v. *Putnam*, 118 U. S. 545 (1886), a tort action brought against a railroad by an injured passenger. The trial judge had instructed the jury to calculate the present value of the plaintiff's damages at the rate shown in standard annuity tables. This Court held that such an instruction "tended to mislead the jury . . . by giving them to understand that the tables were not merely competent evidence of the average duration of human life, and of the present value of life annuities, but furnished absolute rules which the law required them to apply in estimating the probable duration of the plaintiff's life, and the extent of the injury which he had suffered." *Id.*, at 557. The Court observed that "it has never been held that the rules to be derived from such tables or computations must be the absolute guides of the judgment and the conscience of the jury." *Id.*, at 554. The Court discussed this aspect of the *Putnam* decision in *Chesapeake & Ohio R. Co.* v. *Kelly*, 241 U. S. 485 (1916), without questioning its continued validity or intimating that a different rule might apply in FELA actions. See *id.*, at 491–492.

present value issue from becoming unnecessarily prolonged and the jury from becoming hopelessly mired in "difficult mathematical computation." It is therefore permissible for the judge to recommend to the jury one or more methods of calculating present value so long as the judge does not in effect pre-empt the jury's function.[11] A trial judge's instructions to the jury with regard to discount methods—provided that they do not "subject the jury's estimate to . . . rigid mathematical limitatio[n]," *Holloway, supra,* at 528—are entitled to substantial deference on appellate review.

In the present case, however, the trial judge instructed the jury that a zero discount rate was to be applied as a matter of law to appellee's future damages. This instruction improperly took from the jury the essentially factual question of the appropriate rate at which to discount appellee's FELA award to present value, and therefore requires reversal.

## IV

We conclude that Pennsylvania's prejudgment interest and "total offset" rules were improperly applied to this FELA action. The judgment of the Pennsylvania Supreme Court is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, with whom JUSTICE MARSHALL joins, concurring in part and dissenting in part.

I agree with the Court's conclusion that the availability of prejudgment interest in a suit under the Federal Employers' Liability Act (FELA), 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.,* is governed by federal law, and that the state trial court therefore was not at liberty to supplement appellee's judgment on the basis of Rule 238 of the Pennsylvania

---

[11] Moreover, as we recognized in *Pfeifer,* "nothing prevents parties interested in keeping litigation costs under control from stipulating to [the 'total offset' method's] use before trial." 462 U. S., at 550.

Rules of Civil Procedure. I also agree with the Court's conclusion that the trial court erred in refusing to instruct the jury on present value pursuant to federal law. Accordingly, I join Parts I, II–A, and III of the Court's opinion. Because the Court's hasty decision that prejudgment interest is uniformly unavailable in FELA actions fails to follow the teaching of our prior cases and undermines the FELA's system of compensation, I dissent from Part II–B.

## I

Section 1 of the FELA, 45 U. S. C. § 51, provides that a railroad "shall be liable in damages to any [employee] suffering injury . . . from the negligence" of the railroad or its employees. Enacted to ensure compensation for railroad workers injured by the negligence of their employers or of their fellow employees, the FELA uses broad language that, in turn, "has been construed even more broadly" by this Court, consistent with its assessment of congressional intent. *Atchison, T. & S. F. R. Co.* v. *Buell,* 480 U. S. 557, 561–562 (1987); see *Kernan* v. *American Dredging Co.,* 355 U. S. 426, 432 (1958). This Court has "accepted [a] standard of liberal construction in order to accomplish" the "Act's humanitarian purposes." *Urie* v. *Thompson,* 337 U. S. 163, 180 (1949); *Atchison, T. & S. F. R. Co.* v. *Buell, supra,* at 562. In accord with these principles, appellee is entitled under the FELA to interest on the money awarded to him as damages for his economic losses, here lost earnings, between the time of his injury and the time of trial.[1]

---

[1] At the trial of this action, appellee sought recovery for, and the trial court instructed the jury on, four distinct elements of "damages" within the meaning of § 1 of the FELA: (i) appellee's lost earnings from the time of his injury to the time of trial, (ii) appellee's pain and suffering from the time of his injury to the time of trial, (iii) appellee's future pain and suffering, and (iv) appellee's future lost earnings. Tr. in GD 79–23765, Ct. Common Pleas, Allegheny Cty., pp. 694–695. Although the jury returned a single lump-sum verdict for appellee, a properly instructed jury could have returned a verdict that segregated past economic damages from noneconomic

## A

Although the FELA allows recovery of "damages," it does not specifically state that "damages" includes interest. Nonetheless, "in the absence of an unequivocal prohibition of interest . . . , this Court has fashioned rules which granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the light of general principles deemed relevant by the Court." *Rodgers* v. *United States*, 332 U. S. 371, 373 (1947). Plainly, the "congressional purpose" in providing a damages award under the FELA was to compensate a worker for his injury. Nothing in the legislative history or in our decisions suggests that this compensation was intended to be anything less than what was required to compensate him fully. The relevant "general principle" employed by this Court in interpreting the FELA is the provision of liberal recovery under flexible remedies. See *Kernan* v. *American Dredging Co.*, 355 U. S., at 432 ("[I]t is also clear that Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers"). Together, purpose and principle indicate the allowance of interest in FELA cases.

To compensate an injured rail employee fully for income lost prior to trial, it is necessary to award not only the amount of the lost income, but also interest on that income for the time the employee did not have the use of it. "The interest foregone on lost income or on money spent for out-of-pocket expenses from the date of loss to the time of compensation is as much a part of making an injured party whole as is the calculation of her wage rate." *Wilson* v. *Burlington Northern R. Co.*, 803 F. 2d 563, 566 (CA10 1986) (concurring

---

and future economic damages. In my view, the statute sanctions the award of prejudgment interest on only the first of these categories.

opinion), cert. denied, 480 U. S. 946 (1987). In recognition
of the principle that an interest award may be necessary to
provide full compensation, this Court, in other contexts, re-
peatedly has authorized prejudgment interest for economic
injury when the purpose of the overall award is to make the
plaintiff whole. See *General Motors Corp.* v. *Devex Corp.*,
461 U. S. 648, 654–656 (1983) (patent infringement); *Jacobs*
v. *United States*, 290 U. S. 13, 16–17 (1933) (eminent do-
main); *Waite* v. *United States*, 282 U. S. 508, 509 (1931) (pat-
ent infringement); *Miller* v. *Robertson*, 266 U. S. 243, 256–
259 (1924) (contract). In short, it cannot be denied that an
award of interest on pretrial economic losses in an FELA case
is necessary to make the injured worker whole, and that mak-
ing the worker whole is the purpose of the FELA.[2] It would
seem apparent, therefore, that, under our normal method of
deciding such questions, a prejudgment interest award is ap-
propriate in an FELA case.

## B

In reaching the opposite conclusion, the Court relies princi-
pally on a common-law rule that barred prejudgment interest
in suits for personal injury or wrongful death. *Ante*, at
337–338.[3] From the combination of this common-law rule

---

[2] Of course, in not making the injured worker whole, a rule denying pre-
judgment interest provides a windfall to the defendant. It also creates an
incentive for the employer to stall the litigation and postpone the judgment
as long as possible. See *General Motors Corp.* v. *Devex Corp.*, 461 U. S.
648, 656, n. 10 (1983). It seems unlikely that Congress intended such re-
sults to be part of its program of "liberal recovery" for workers.

[3] The Court also relies on "Congress' failure to disturb a consistent judi-
cial interpretation" of the FELA denying prejudgment interest. *Ante*, at
338–339. However, "the doctrine of legislative acquiescence is at best
only an auxiliary tool for use in interpreting ambiguous statutory provi-
sions. . . . We do not expect Congress to make an affirmative move every
time a lower court indulges in an erroneous interpretation." *Jones* v. *Lib-
erty Glass Co.*, 332 U. S. 524, 533–534 (1947). See also *Helvering* v.
*Reynolds*, 313 U. S. 428, 432 (1941). Moreover, the "consistent judicial
interpretation" relied on here is particularly unpersuasive. "Few of the

and the FELA's silence on interest, the Court would discern a congressional intent to disallow interest awards entirely in FELA cases—an intent, in effect, to deny full compensation to workers covered by the FELA.[4] Closer scrutiny of the development of interest and damages law, however, reveals the flaws in this facile analysis.

The common law's hostility to interest awards usually is traced to the medieval view of interest as an evil thing. See D. Dobbs, Law of Remedies § 3.5, p. 165 (1973); C. McCormick, Law of Damages § 51 (1935). Before the time of Henry VIII, English common law prohibited the payment of interest even for the lending of money. 1 T. Sedgwick, Measure of Damages § 283 (9th ed. 1912). The abhorrence of all forms of interest gradually receded, so that, by the time of the FELA's enactment, it was "almost universally held in this country that interest is in the proper case given as damages by the common law." § 293; 1 T. Sedgwick, Measure of

cases contain any extensive discussion of the subject . . . and . . . many of the recent cases simply note that the issue was settled in an older case that disposed of the point summarily." *Poleto* v. *Consolidated Rail Corporation*, 826 F. 2d 1270, 1278 (CA3 1987). Indeed, a number of the most recent opinions have recognized the "excellent case" to be made for prejudgment interest under the FELA. *Ibid.* See also *Wilson* v. *Burlington Northern R. Co.*, 803 F. 2d 563, 566–568 (CA10 1986) (concurring opinion), cert. denied, 480 U. S. 946 (1987); *Garcia* v. *Burlington Northern R. Co.*, 597 F. Supp. 1304 (Colo. 1984), rev'd on other grounds, 818 F. 2d 713 (CA10 1987). Finally, of course, cases of this Court, by consistently giving the FELA a broad and flexible construction, have signaled the opposite result. See, *e. g.*, *Kernan* v. *American Dredging Co.*, 355 U. S. 426 (1958); *Jamison* v. *Encarnacion*, 281 U. S. 635 (1930).

[4] I do not understand the Court to argue that the absence of any express reference to interest in the FELA is, by itself, probative. Certainly, such a contention could not succeed. First, as explained above, that approach is directly contrary to this Court's settled technique for deciding questions of the availability of interest in the face of congressional silence. Second, the FELA's express authorization of the recovery of "damages" may be read as providing for prejudgment interest. Indeed, as the Court properly recognizes: "Prejudgment interest . . . is part of the actual *damages* sought to be recovered." *Ante*, at 335 (emphasis added).

Damages § 293 (8th ed. 1891). Thus, to an authority writing in 1891, 17 years before the passage of the FELA, "[t]he gradual extension of the principles allowing interest as damages [was] clear." § 297.

To be sure, claims for interest often were summarily dismissed in personal injury and wrongful-death suits. See McCormick § 56, p. 224. It was, nonetheless, "the prevailing view [that] interest may be allowed in all actions of tort where the loss is pecuniary," 1 T. Sedgwick, Measure of Damages § 316, p. 630 (9th ed. 1912), and, even prior to the FELA, interest sometimes was allowed on economic losses that had resulted from personal injury. See *Washington & Georgetown R. Co.* v. *Hickey*, 12 App. D. C. 269, 275–276 (1898); *Georgia R. & Banking Co.* v. *Garr*, 57 Ga. 277, 280 (1876); see also *Ell* v. *Northern Pacific R. Co.*, 1 N. D. 336, 353, 48 N. W. 222, 227 (1891) (pursuant to statute). However, because claims for lost earnings in personal injury suits frequently were joined with claims for noneconomic injury, such as pain and suffering, interest usually was not awarded. McCormick § 56, p. 224. Thus, the generalization about the unavailability of interest was criticized by Professor McCormick as "hasty and injudicious": "It seems clearly desirable that the jury should at least be permitted, if not required, to add interest as compensation for delay in payment of those purely pecuniary losses which result from an injury to the person." *Ibid.*

Against this background, one might conclude that, in mandating that railroads "shall be liable in damages," Congress actually intended not to provide a blanket award of prejudgment interest on personal injury and wrongful-death awards under the FELA. Certainly, many FELA remedies, such as recovery for past pain and suffering and for future damages, are widely viewed in the context of personal injury litigation as inappropriate objects for an interest award even today. See, *e. g.*, *Poleto* v. *Consolidated Rail Corporation*, 826 F. 2d 1270, 1278, n. 14 (CA3 1987); Comment, Prejudg-

ment Interest: An Element of Damages Not To Be Overlooked, 8 Cumberland L. Rev. 521, 536–537 (1977). This is so because interest on these elements of damages is not necessary to full compensation.[5] It should not be concluded, however, that Congress intended to deny interest on past economic losses, such as the lost wages that are a part of the recovery appellee seeks here. Therefore, the Court's departure from our normal inquiry into the relation between an allowance of interest and Congress' purpose in creating an obligation, and the Court's indifference to the policy of liberal recovery under the FELA, are without justification.

## C

The Court's conclusion about the unavailability of interest in FELA actions is particularly curious coming, as it does, in a case which also involves the method of discounting an award of future damages to present value. Awarding prejudgment interest and discounting to present value are really two sides of the same coin. For precisely the same reason that "'a given sum of money in hand is worth more than the like sum of money payable in the future,'" *ante*, at 339, quoting *Chesapeake & Ohio R. Co.* v. *Kelly*, 241 U. S. 485, 489 (1916), a given sum of money in hand is worth less than the like sum of money had it been paid in the past. It is hard to see how the Court can recognize that the meaning of "damages" under the FELA requires that future lost earnings be discounted to present value, but fail to recognize that the same term encompasses a mandate that past lost earnings be increased to present value, through the use of prejudgment

---

[5] Arguably, damages for pain and suffering are themselves not truly compensatory. See D. Dobbs, Law of Remedies § 8.1, pp. 548–550 (1973). Certainly, such awards are of a different character. They are inherently noneconomic and are established through the subjective discretion of the jury. *Poleto* v. *Consolidated Rail Corporation*, 826 F. 2d, at 1278, n. 14. Prejudgment interest on these speculative awards does not make up for the lost use of money and cannot be considered compensatory in any realistic sense.

interest. In effect, the Court thus only half-recognizes the principle that an FELA plaintiff is entitled to recover " 'the damages . . . [that] flow from the deprivation of . . . pecuniary benefits.' " *Norfolk & Western R. Co.* v. *Liepelt*, 444 U. S. 490, 493 (1980), quoting *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 70 (1913).

Indeed, in previous discussions of present-value calculations, we have recognized the symmetry between discounting to present value and awarding prejudgment interest. In *Jones & Laughlin Steel Corp.* v. *Pfeifer*, 462 U. S. 523, 538, n. 22 (1983), the Court instructed:

> "It is . . . more precise to discount the entire lost stream of earnings back to the date of injury—the moment from which earning capacity was impaired. The plaintiff may then be awarded interest on that discounted sum for the period between injury and judgment, in order to ensure that the award when invested will still be able to replicate the lost stream." [6]

This Court has held that the present-value principles of *Pfeifer* apply in FELA actions. See *St. Louis Southwestern R. Co.* v. *Dickerson*, 470 U. S. 409, 411–412 (1985) *(per curiam)*.

## II

In sum, I conclude that prejudgment interest on past economic loss is available as part of the damages award in FELA

---

[6] *In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F. 2d 633 (CA7 1981), on which the Court in *Pfeifer* relied, stated the necessary relation between interest awards and discounting to present value even more plainly:

"[Even when] prejudgment interest [is rejected] as a separate element of damages, the measure of compensatory damages in wrongful death cases unquestionably does involve some form of interest in the determination of 'present value.' Prejudgment interest *per se* is not allowable [under Illinois law] as a separate element of a wrongful death damages award, but use of interest is implicit in the calculation of the present value of plaintiff's pecuniary loss as of the date of trial." 644 F. 2d, at 641.

cases. This reading of the statute comports with the congressional intent to provide liberal recovery under the FELA. Of course, by applying Rule 238 of the Pennsylvania Rules of Civil Procedure, the state trial court went further and allowed prejudgment interest on appellee's general verdict, including interest on appellee's damages for pain and suffering and future losses, which are not appropriate objects for a compensatory award of prejudgment interest. Because the trial court erred in its instruction on present value, however, *ante*, at 339–342, a new trial on damages will be necessary in any event. As part of appellee's award at his new trial, I would allow interest on the past economic damages he has proved.

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE joins, concurring in part and dissenting in part.

For the reasons given by the Court, I agree that prejudgment interest was impermissibly awarded in this FELA case. Accordingly, I join Parts I and II of its opinion. Because the trial court erroneously gave conclusive effect to a state rule requiring the use of a "total offset" method of calculating present value, I also agree that we must reverse the judgment of the Supreme Court of Pennsylvania upholding that decision. I do not agree, however, that juries must in all circumstances be left free to choose among the total offset rule and alternative methods of accounting for anticipated future inflation.

The majority correctly notes that damages awards in state-court FELA cases must be based on an approximation of present value, and that the jury must be instructed accordingly. *Ante*, at 339–340. "Although . . . [it is] clear that no single method for determining present value is mandated by federal law and that the method of calculating present value should take into account inflation and other sources of wage increases as well as the rate of interest, it is equally clear that an utter failure to instruct the jury that present value is the proper measure of a damages award is error." *St. Louis*

*Southwestern R. Co.* v. *Dickerson*, 470 U. S. 409, 412 (1985). The reason for this rule is plain: because of the time value of money and the practice of awarding damages in a lump sum, the failure to reduce awards for loss of future wages to their present value would risk the systematic overcompensation of plaintiffs. *Ibid.*

For reasons that were explained in great detail in this Court's opinion in *Jones & Laughlin Steel Corp.* v. *Pfeifer*, 462 U. S. 523 (1983), the best method for calculating the approximate present value of an award for loss of future earnings could become the subject of reasonable debate in almost any case. Some of the uncertainties arise from the phenomenon of price inflation in our economy, and others arise from the possibility of "productivity gains" that would have increased a particular plaintiff's real wages over time. Absent congressional action, *Pfeifer* cautiously declined to impose any one method of accounting for these phenomena on all litigants and all cases. Instead, the Court concluded that in federal bench trials, the judge should be permitted to choose among reasonable methods and should explain the choice. *Id.*, at 548–549, 552–553.

The trial judge in this case believed that the choice among methods of calculating present value was a procedural issue, and she "blindly applied the total offset method [of] *Kaczkowski* v. *Bolubasz*, 491 Pa. 561, 421 A. 2d 1027 (1980)." 513 Pa. 86, 100, 518 A. 2d 1171, 1178 (1986) (dissenting opinion below); see also Tr. 577–578. The Supreme Court of Pennsylvania concluded that use of the total offset method was appropriate here because that method had been "deliberately selected [in *Kaczkowski*] as the rule that most nearly provides an injured claimant with damages to the full extent of the injuries sustained." 513 Pa., at 92–93, 518 A. 2d, at 1174. Whatever might be said in favor of precluding individual trial courts and juries from reexamining such a rule, we specifically held in *Pfeifer* that it was improper for a federal trial court to apply the *Kaczkowski* rule without examining

its suitability in the particular case before the court. See 462 U. S., at 546, 551–553. The reason for this holding was a reluctance "to select [any] of the many rules [for calculating present value] that have been proposed and establish it for all time as the exclusive method in all federal trials for calculating an award for lost earnings in an inflationary economy." *Id.*, at 546. State appellate courts are in no better position than this Court to select a single rule for all cases and all time. The reasoning in *Pfeifer* therefore precludes the automatic application of any method of estimating present value in an FELA case. Although I therefore agree with the Court that the judgment below must be reversed, I do not believe that a jury charge reflecting the *Kaczkowski* rule would necessarily have been impermissible in this case.

Believing that the choice of a method for estimating present value is always an "essentially factual question," the majority will permit the trial judge to "recommend to the jury one or more methods" but will not permit the judge to impose "'rigid mathematical limitation[s].'" *Ante,* at 341–342. As with many mixed questions of law and fact, one can imagine cases in which the choice between competing methods of calculating present value would turn on disputed factual questions. In such cases, I agree, it would be error to take those questions from the jury. If, for example, the parties offered conflicting evidence as to foreseeable wage increases, attributable to promotions for which the plaintiff would have been eligible but for the injury that gave rise to the case, a court could not properly impose on the jury a rule under which the market interest rate is deemed equal to price inflation plus all other sources of future wage increases. Cf. *Pfeifer, supra,* at 544–545 (discussing *Beaulieu* v. *Elliott,* 434 P. 2d 665 (Alaska 1967)). The case before us, however, raises no such possibility.

In this case, the trial judge applied the rule set out in *Kaczkowski,* v. *Bolubasz,* 491 Pa. 561, 579–583, 421 A. 2d 1027, 1036–1039 (1980), under which the rates of future price

inflation are presumed equal to the available interest rates. See 513 Pa., at 94–95, 518 A. 2d, at 1175. (Under *Kaczkowski*, it should be noted, the jury rather than the judge estimates the effects of lost "productivity gains," which depend largely on factors that are specific to the plaintiff and the industry in which the plaintiff worked. See 491 Pa., at 579–580, 421 A. 2d, at 1036–1037.) The relation between future price inflation and interest rates has virtually nothing to do with any particular plaintiff or with the facts of any individual case. The absence of such a connection is illustrated by the present case, in which there is no suggestion that appellant offered any expert testimony or other evidence about future levels of price inflation and interest rates. See Brief for Appellant 34.

Appellant's proposed jury instruction, moreover, made no mention of inflation, and thus appears on its face to have been potentially far more misleading than the *Kaczkowski*-type instruction actually given. Compare App. 68a–69a with Tr. 701–702. The majority does not say, and I do not think one could properly say, that the trial judge erred by refusing to give appellant's proposed jury instruction. Nor, as this Court's *Pfeifer* opinion amply demonstrates, is the prediction of future inflation and interest rates a matter that can properly be referred to common experience or common sense. The majority nonetheless concludes that the jury in this case should have been left free to choose between a reasonable rule like the one adopted in *Kaczkowski* and such other methods as may have occurred to the jurors. I cannot agree that federal law requires a trial judge to permit the jury to speculate about something so uncertain and so disconnected from any evidence in the case at hand.

The majority suggests that its decision to the contrary is supported by *Chesapeake & Ohio R. Co.* v. *Kelly*, 241 U. S. 485 (1916), and *Louisville & Nashville R. Co.* v. *Holloway*, 246 U. S. 525 (1918). The majority does not, and I believe could not, say that the result reached today is compelled by

those decisions. *Kelly* held only that it is error for a court to take no steps to ensure that an FELA award is reduced to its approximate present value. Although the Court assumed that juries would calculate the reduction, it did not say or imply that the choice of a method for making that calculation must always be left entirely to the jury. Similarly, *Holloway* held that a party was not entitled to a jury instruction requiring that an award be discounted by the legal rate of interest in effect at that time. Choosing the legal rate of interest as the discount rate in an FELA action would be arbitrary because there is no reason to suppose that it takes account of inflation or of the reasonable investment opportunities actually available to a prevailing plaintiff. See generally *Jones & Laughlin Steel Corp.* v. *Pfeifer*, 462 U. S., at 537–539. As *Pfeifer* indicates, however, the "total offset" rule at issue in this case is not arbitrary and would not constitute reversible error if employed by a judge in a bench trial, even if the parties had not introduced evidence to support it. See *id.*, at 546–547, 551–553. Thus, although *Holloway* rejected a party's claim that it was entitled to a particular "rigid mathematical limitatio[n]" on a jury's discretion, it did not say or imply that a judge may never impose any such limitation. Compare *Holloway*, *supra*, at 528, with *ante*, at 340–341.

Although it was error to apply *Kaczkowski* automatically in this case, I see no reason to prohibit the trial court in an FELA case from employing a rebuttable presumption in favor of the *Kaczkowski* rule. That rule is reasonable, and we indicated in *Pfeifer* that it could be used in a bench trial so long as the judge chose it deliberately. 462 U. S., at 551–553. Unless one of the parties shows by evidence or argument that some other rule or method of estimating present value may be more appropriate, I simply see no basis for turning a jury loose to speculate about the complex and tech-

nical matters that underlie any method of estimating present value.*

In the case before us, appellant offered a jury instruction on the calculation of present value that was inconsistent with *Kaczkowski.* App. 68a–69a. It has not been suggested, however, that appellant offered evidence to show that present value could be estimated more accurately by some method other than the one adopted in *Kaczkowski;* nor is there any suggestion that appellant was denied an opportunity to present such evidence. See Tr. 577; Brief for Appellant 34. Assuming that the record would not support such suggestions (a question that I would leave for the Supreme Court of Pennsylvania to address on remand), I would require only that the trial judge make a "deliberate choice" between the *Kaczkowski* rule and others that may be suggested. See *Pfeifer, supra,* at 552–553. If a reasonable choice were made in favor of the *Kaczkowski* rule, I would permit the jury's verdict to be reinstated.

---

*Despite the majority's suggestion to the contrary, *ante,* at 341, *Pfeifer* did not imply that the choice between the *Kaczkowski* rule and some competing method is necessarily a jury question. First, the decision in *Pfeifer* dealt with cases arising under the Longshoremen's and Harbor Workers' Compensation Act, where the trier of fact is a federal judge. 462 U. S., at 547. For that reason, we had no occasion in *Pfeifer* to decide which of the many questions that may arise in the calculation of present value may be resolved by the judge in a jury case. Second, the *Pfeifer* opinion did not consistently say that the method of calculating present value must be chosen by the "trier of fact." See, *e. g., id.,* at 548–549 ("[W]e do not believe a trial court adopting [a 'real interest rate'] approach . . . should be reversed if it adopts a rate between 1 and 3% and explains its choice"). Third, *Pfeifer*'s expressed expectation that a trial court would explain its choice of a particular discount rate suggests that the decision is not always an "essentially factual question." See *ante,* at 342. Judges are not ordinarily expected to give explanations for their findings of fact, and juries ordinarily do not give explanations at all.