STEAGALL, Justice.
Wayne Diamond sued J.F.P. Offshore, Inc., in the Mobile Circuit Court, for damages based on hand-related injuries he sustained as a crew member of a drilling rig owned by J.F.P. Offshore. He sued under the Jones Act, alleging negligence and failure to provide a safe workplace. The jury returned a verdict in favor of Diamond in the amount of $650,000; the trial court reduced the sum to $617,500 to reflect the 5% contributory negligence the jury found.
J.F.P. Offshore raises several issues on appeal, most of which deal with the future lost wages that Diamond sought and on which the trial court charged the jury. J.F.P. Offshore contends that expert testimony was required in order for the jury to reduce any award of damages for lost future wages to present value. J.F.P. Offshore also contends that the trial court erred in failing to instruct the jury on how it was to arrive at a present value, i.e., that the trial court failed to provide the jury with any guidelines to that end.
J.F.P. Offshore argues initially that substantive federal law controls this case, because Diamond sued under the Jones Act, and that the jury instructions regarding future lost wages should have been based on federal law. Although the trial court applied federal law in charging the jury on contributory negligence, it did not do so in charging the jury on future lost wages. With regard to which law — state or federal — to apply in an action brought in a state court on a federal claim, we stated in Illinois Central Gulf R.R. v. Price, 539 So.2d 202, 205-06 (Ala.1988):
“Judicial comity causes us, as a State court, to defer to federal law as to consequences that intimately affect recovery or non-recovery in a case involving a federal cause of action over which the courts of this State have concurrent jur-isdiction_ Under the concepts of civility and courtesy (which we reach before we reach the concept that an Alabama law that interferes with a federal law must yield), we defer to federal law, whether it be substantive or procedural, in enforcing a federal cause of action, just as the federal courts have deferred to State law, whether it be substantive or procedural, see Guaranty Trust Co. of New York v. York, [326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945),] in exercising jurisdiction over a cause of action solely because of the diversity of citizenship of the parties.”
More specifically, this is an admiralty case, and “[t]he legal rights and liabilities arising in respect of a cause of action within the full reach of admiralty jurisdiction are measurable by standards of maritime law, and in the event of an action being brought in state courts in respect of such a cause of action, maritime substantive law *1004 applies.” 1 A. Jenner, J. Loo, & J. Grieder, Benedict on Admiralty § 127 (1987). Although there is no federal general common law, Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), there is “federal common law” in certain limited areas:
“[Ajbsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases. In these instances, our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control.”
Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981).
We are, therefore, constrained to apply federal substantive law to this case. Turning to the charge the trial court gave here concerning future lost wages, we find it apparent that that instruction was incomplete. The trial court charged the jury as follows:
“There is also a claim for loss of future earnings or future earning capacity. In arriving at the amount of your award for any loss of future earnings or earning capacity you should consider what the Plaintiff’s health, physical ability and earning power or capacity were before the accident and what they are now. The nature and the extent of his injuries and whether or not they are reasonably certain to be permanent. Or, if not permanent, the extent of their duration. All to the end of determining first the affect if any of his injury upon his future earnings or earning capacity and second the present cash value of any lost or future earnings or earning capacity which you are reasonably satisfied from a preponderance of the evidence in this case that the Plaintiff is reasonably certain to suffer in the future as a proximate result of the injury in question.
“Now you have heard me use that term ‘present cash value’ and you are probably asking, ‘Well, what does that mean?’ The law says that ‘present cash value’ means the sum of money needed now which when added to what that sum may reasonably be expected to earn in the future will equal such earnings at the time in the future when these earnings would have been received.”
We need look no further than our own federal circuit to determine what the charge should have included. The trial court correctly charged the jury that an award for future lost wages must be reduced to present value, see Monessen Southwestern Ry. v. Morgan, 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988); St. Louis Southwestern Ry. v. Dickerson, 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); and Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983); it failed, however, to charge the jury on the appropriate method to use in determining present value.
In Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir.1983), the Fifth Circuit Court of Appeals discussed the three methods available for adjusting future lost wages to present value (case-by-case, below-market-discount, and “total-offset”) and held:
“[FJact-finders in this Circuit must adjust damage awards to account for inflation according to the below-market discount rate method. The parties may, if they wish, stipulate the below-market discount rate, as they may stipulate any other disputed issue. If they are unable to do so, they may introduce expert opinion concerning the appropriate rate. Other evidence about the effect of price inflation is inadmissible. Evidence about the likelihood that the earnings of an injured worker would increase due to personal merit, increased experience and other individual and societal factors continue, of course, to be admissible. We recognize that the Supreme Court declined in Pfeifer to select a single method *1005 of accounting for inflation. We are confronted, however, with the need to adapt that opinion to jury trials. We also think it desirable to afford litigants and the courts the opportunity to determine the actual operation of this less complex method in order that its efficacy for national use can be determined.”
722 F.2d at 122 (emphasis added).
While the above language does not mandate that expert testimony be introduced to determine present value, it does clearly require that the below-market discount rate method be used in arriving at that figure. J.F.P. Offshore’s requested jury charge number 32 (Federal Pattern Jury Instruction 6.1) contained an explanation of that method and reads as follows:
“If you should find that the Plaintiff has proved a loss of future earnings, any amount you award for that loss must be reduced to present value. This must be done in order to take into account the fact that the award will be paid now, and the Plaintiff will have the use of that money now and in the near future, even though the total loss will not be sustained until later in the future.
“In order to make a reasonable adjustment for the present use of money representing a lump-sum payment of anticipated future loss, you must apply what is called a below-market discount rate.
“In making that calculation you should first determine the net, after-tax income the Plaintiff would have received during the remainder of his working life, including any increases he would have received as a result of any factors other than inflation. This future income stream must then be discounted or reduced by applying a below-market discount rate which represents the estimated market interest rate the award could be expected to earn over the period of the loss (adjusted for the effect of any income tax on the interest so earned), and then reduced by the estimated rate of future price inflation.”
Since Culver v. Slater, supra, the Eleventh Circuit Court of Appeals has reiterated that the below-market discount rate must be used to calculate the present value of future lost wages. In Deakle v. John E. Graham & Sons, 756 F.2d 821, 832 (11th Cir.1985), the Court stated:
“The purpose and method of discounting damage awards for lost income have been fully set forth ... and we need not discuss these matters in great depth here. We simply note that this Circuit has chosen from among the methods currently available the approach which utilizes a below market discount rate.”
We conclude that the trial court erred in refusing to charge the jury on a below-market discount rate, and we reverse the judgment and remand this case for a new trial. Because of our disposition of that issue, we pretermit discussion of the other issues raised on appeal.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX,* HOUSTON and INGRAM, JJ., concur.
SHORES and ADAMS, JJ., dissent.