897 So.2d 744 (2005)
Brandon WILLIAMS
v.
THE CITY OF NEW ORLEANS by and Through the PUBLIC BELT RAILROAD COMMISSION OF THE CITY OF NEW ORLEANS
No. 2004-CA-0655.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 2005.
*746 James M. Williams, Houghtaling & Williams, L.L.C., Metairie, Counsel for Plaintiff/Appellee.
Lawrence J. Ernst, Gregory S. LaCour, Christovich & Kearney, L.L.P., New Orleans, Counsel for Defendant/Appellant.
Court composed of Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS Sr., Judge EDWIN A. LOMBARD.
EDWIN A. LOMBARD, J.
This appeal is from the trial court judgment determining damages in this action arising under provisions of the Federal Employers Liability Act ("FELA") for personal injuries sustained by the plaintiff while employed as a switchman for the New Orleans Public Belt ("NOPB") railroad which is controlled and operated by defendant, the City of New Orleans through the Public Belt Railroad Commission. For the reasons that follow, we affirm the judgment of the trial court.

Relevant Facts and Procedural History
Brandon Williams was injured on April 27, 2000, while working as a switchman for the NOPB when the locomotive he was on crashed into the rear of a parked locomotive. He sustained serious back and neck resulting in extensive medical treatment, including a two-level fusion procedure on March 13, 2002, and ten-percent permanent partial impairment of his whole body function[1]. During the judge trial of this matter (which occurred over a four day period in November and December 2003) *747 the parties stipulated that NOPB was eighty-five percent negligent in causing the train crash that injured the plaintiff and that NOPB's negligence was a legal and factual cause of the plaintiff's injuries. Accordingly, the only issue remaining for determination by the court was the appropriate amount of damages recoverable by the plaintiff. The trial judge awarded the following:

 General Damages .................................. $350,000.00
 Medical Expenses ................................. $112,563.95
 Past Lost Wages .................................. $145,591.58
 Future Lost Earning Capacity ..................... $762,427.94
 Loss of Fringe Benefits .......................... $137,237.03

The judgment was signed on January 7, 2004.

Discussion
On appeal, NOPB challenges only the trial court's award of future lost wages and benefits, arguing that it is grossly excessive because the plaintiff failed to mitigate his damages by returning to work as a truck driver, obtain comparable work in another industry, or re-train himself in a new profession at Delgado Community College.
The Federal Employers Liability Act ("FELA") was designed to provide a federal statutory negligence action and is a railroad employee's exclusive remedy for workplace injuries[2]. Sinkler v. Missouri Pacific Railroad Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958); Bodenheimer v. New Orleans Public Belt and CSX, XXXX-XXXX, p. 2 (La.App. 4 Cir. 5/14/03) 845 So.2d 1279, 1282. Determining FELA liability is a distinctly federal question. Sinkler, supra. Although state courts have concurrent jurisdiction, pursuant to 45 U.S.C. § 56, federal law, and not state law, must be applied. Monessen Southwestern Railway Co. v. Morgan, 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988); Bodenheimer, 845 So.2d at 1283. Under FELA, a successful plaintiff is entitled to recover for all past, present and probable future harm attributable to defendant's tortious conduct, including pain, suffering and mental anguish. 45 U.S.C. § 51; Marchica v. Long Island RR, 31 F.3d 1197, cert. denied, 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631. Because the proper measure of damages under the FELA is inseparably connected with the right of action, it is an issue of substance that must be settled according to the general principles of law as applied by the federal courts. Monessen Southwestern Railway Co. v. Morgan, 486 U.S. 330, 335, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988); Bodenheimer, 845 So.2d at 1283; Shaw v. Texas and Pacific Railway Co., 170 So.2d 874, 879 (La. 4th Cir.1965). If the railroad's negligence played any part, no matter how small, in causing an employee's injury then the railroad is liable for the *748 resulting damages. Rogers v. Pacific Railway Co 352 U.S. 500, 508, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); E'Teif v. National R.R. Passenger Corp., 1998-2503 (La.App. 4 Cir. 4/22/99), 733 So.2d 155.
First, the defendant contends that the trial court erred in ruling that the plaintiff was not required to mitigate his damages by returning to work as a truck driver. Dr. Claude Williams of the Southern Orthopaedic Specialists, retained by the defendant to perform two independent medical examinations ("IME") before and after the plaintiff's surgery, testified at trial that based upon his examination and review of the plaintiff's records he estimated in July 2002 that the plaintiff had a 10% permanent partial impairment of function in his body as a whole, but it was his opinion that neck surgery did not impair and individual's ability to work as a long haul driver. On the other hand, the plaintiff's treating orthopedist, Dr. Donovan, opined at trial that in light of the two-level surgical fusion of the plaintiff's neck, the plaintiff should not be employed as a long-haul truck driver. In addition, the plaintiff testified that employment as a local driver required lifting and the functional capacity evaluation performed in August 2003 for the defendant by Crescent City Physical Therapy indicates that the plaintiff is restricted to performing light to medium work with no lifting greater than 40 pounds. Accordingly, based upon the record, we cannot find that the trial court was manifestly erroneous in ruling that the plaintiff was not required to return to work as a truck driver to mitigate damages.
Next, the defendant contends that the trial court erred in its award of damages for future lost wages and benefits given the fact that the plaintiff could either obtain comparable employment or retrain himself in a new profession at a community college. However, although the plaintiff graduated from high school, the vocation rehabilitation counselor hired by both the plaintiff and defendant agreed that the plaintiff's reading and math abilities are at a level below that of a high school graduate. Based on this assessment, the defendant's vocational rehabilitation counselor conceded at trial that these findings were not consistent with the requirements for a degree in either the 2 or 4-year college program in business administration that he advocated the plaintiff should enroll in pursuit of an alternative career. The plaintiff's vocational rehabilitation counselor testified based on vocational testing and interviews with the plaintiff in light of his medical records, including the functional capacity evaluation and IME reports submitted by the defendant, the plaintiff is only able to engage in work requiring a light level of exertional capacity and is limited to unskilled, semi-skilled, entry level work which typically pays minimal wages in the $8 range. Accordingly, on this record, we cannot find that the trial court was manifestly erroneous in calculating the plaintiff's future lost future wages and benefits based upon future unskilled or semi-skilled labor at a minimal wage.
Finally, the defendant contends that, in adopting the work-life expectancy of 28.46 years utilized by the defendant's economist in calculating the plaintiff's lost future wages, the trial court erred because the plaintiff had only been employed by the defendant for less than three months at the time of the accident, his work-history prior to NOPB employment was "sketchy", and the railroad industry has a high turnover rate. In her reasons for judgment, however, the trial judge specifically noted that she found the plaintiff to be a credible witness and that his work history showed that he consistently attempted to take advantage of opportunities *749 and better his circumstances. Accordingly, we cannot find that the trial judge was manifestly erroneous in basing her calculations for future lost wages on the work-life expectancy utilized by the defendant's economist.

Conclusion
The parties stipulated that NOPB was eighty-five percent negligent in causing the train crash that injured the plaintiff and that NOPB's negligence was a legal and factual cause of the plaintiff's injuries. It is undisputed that the plaintiff is unable to return to his former employment as a railroad switchman. Further, the record contains evidence to support the conclusions reached by the trial court regarding the plaintiff's future potential earning capacity now and his future potential earning capacity with the NOPB but for the accident. Accordingly, we cannot find that the trial court's judgment in determining the appropriate quantum to be awarded in this case for future lost wages and benefits was manifestly erroneous. The judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] As a result of the accident, the plaintiff was initially treated at the emergency room of Tulane University Hospital and subsequently, on May 1, 2000, by Dr. Cerrato. In accordance with Dr. Cerrato's prescription, the plaintiff attended physical therapy sessions with Dr. Dennington on May 1, 2, and 8. The plaintiff then sought treatment at Northshore Orthopedics in Houston, Texas, where he was treated Drs. Berliner and Donovan from May 19, 2000, until August 14, 2000, receiving steroid injections to alleviate the pain. The plaintiff resumed his physical therapy with Dr. Dennington in New Orleans, regularly attending physical therapy from August 23, 2000, until October 6, 2000, and then returned to Dr. Donovan for evaluation. After receiving an additional steroid injection on December 1, 2000, as prescribed by Dr. Donovan, the plaintiff began receiving epidural injections on December 18, 2000. He continued treatment and pain management with Dr. Donovan until June 27, 2001, when Dr. Donovan recommended surgery. The plaintiff returned to New Orleans where he was examined on July 17, 2001, by Dr. Kenneth Adatto who opined that the pain arising from the plaintiff's disc injury would not be resolved by back surgery. After treating the plaintiff for several months, however, Dr. Adatto concluded that the plaintiff needed neck surgery. Dr. Adatto administered cervical facet injections to the plaintiff for pain relief until the plaintiff's health insurer approved the surgery. Finally, on March 13, 2002, Dr. Adatto performed a two-level cervical fusion procedure. Regular follow up care was administer to the plaintiff until May 29, 2003, when Dr. Adatto opined that he had reached maximum medical improvement. The plaintiff continued to experience pain, however, and on September 19, 2003, returned to Dr. Donovan for further evaluation and treatment.
[2] FELA represents a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and who are helpless to provide adequately for their own safety. Sinkler, 356 U.S. at 329, 78 S.Ct. 758